23 CV 7460 (PAC)(OTW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES MILLS, CRAIG SOTOMAYOR, and
BRADEN HOLLIDAY,

Plaintiffs,

- against -

NEW YORK CITY, New York,

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

***SYLVIA O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Nicholas R. Ciappetta*
*Tel: (212) 356-4036*

MICHELLE GOLDBERG-CAHN,
NICHOLAS R. CIAPPETTA,
Of Counsel.

December 8, 2023

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT

POINT I

PLAINTIFFS LACK STANDING TO ASSERT
SECOND AMENDMENT CLAIMS WITH
RESPECT      TO      THE      CHALLENGED
REGULATIONS AND LAWS ...............................................................3

(a) Plaintiff's Requested Relief is Overbroad as
the Complaint Lacks Facts to Support an
Injury as to Certain of the Challenged
Regulations. ................................................................4

(b) Allegations of Hypothetical Future Harm are
Insufficient to Establish Standing. ...........................5

POINT II

PLAINTIFFS FAIL TO STATE A CLAIM
UNDER THE SECOND AMENDMENT ............................................7

(a) Governing Legal Principles ...................................7

(b) Plaintiffs misconstrue and misapply the first
step of the Bruen inquiry. ........................................8

i.  The Burden under Step One Rests with
Plaintiffs..........................................................9

ii. Plaintiffs' proposed conduct is ill-defined
by the Complaint..........................................10

iii. Plaintiffs fail to conduct the textual
analysis required by Bruen. .........................12

(c) The laws and rules challenged herein do not
infringe upon Plaintiffs' Second Amendment
rights. ......................................................................15

i.  Administrative Code § 10-302.1(b) .............15

ii. Administrative Code § 10-131(a)(2) ...........16

Page

iii. 38 RCNY § 5-25(d)(4)...............................................................19

iv. 38 RCNY § 5-22(a)(7)...............................................................20

v. Handgun        Purchase        Authorization
Requirement.............................................................................22

vi. 38 RCNY § 5-22(a)(8)...............................................................24

CONCLUSION.................................................................................................25

## PRELIMINARY STATEMENT

Plaintiffs filed this overbroad federal lawsuit against the City of New York to invalidate a number of mostly unrelated firearm regulations. These regulations do not appear to have been enforced against Plaintiffs or in any way injured them or infringed upon their ability to exercise rights protected by the Second Amendment of the United States Constitution. Instead, Plaintiffs' lawsuit seems based more on their dislike of the regulations in question. But antipathy towards a law or rule does not suffice to establish a constitutional violation.

Plaintiffs challenge Title 38, §§ 5-22(a)(7)-(10) and 5-25 of the Rules of the City of New York ("RCNY") and New York City Administrative Code ("Administrative Code") § 10-302.1(a)-(e). These regulations limit a concealed carry licensee to the carry of one (1) handgun on their person at any time (38 RCNY § 5-22(a)(7)); provide that a licensee is authorized to own only the handgun(s) listed on their license (38 RCNY § 5-22(a)(8)); require a licensee to obtain written permission from the New York City Police Department ("NYPD") License Division to purchase or replace a handgun (38 RCNY § 5-22(a)(9), (10)) and 38 RCNY § 5-25[1]); limit the number of handguns allowed on a handgun license (38 RCNY § 5-25(d)); and prevent the sale to or acquisition by a licensee of more than one firearm every ninety ("90") days (Administrative Code §§ 10-302.1(a), (b))[2]. Plaintiffs also seek a declaration that "requiring individuals to pay money to the government for permission to possess and carry firearms violates the Second and Fourteenth Amendments" or, in the alternative, a declaration that "the

---

[1] Title 38, Section 5-25 is a lengthy rule that contains five subsections with many additional subparts and, among other things, requires the purchase or acquisition of a safety locking device, regulates the number of handguns allowed on a handgun license, and establishes procedures for the License Division to provide prior written authorization in the nature of a "Handgun Purchase Authorization" form to a licensee seeking to acquire a firearm. While Plaintiffs seek to enjoin the entirety of 38 RCNY § 5-25, the allegations in the Complaint only concern certain of the requirements listed therein.

[2] Plaintiffs also challenge Administrative Code §§ 10-302.1(c)-(e), but those subsections address the disposal of a firearm rather than the purchase or sale of more than one firearm within ninety days.

requirement that an applicant and/or licensee pay more than a nominal fee to apply for and/or renew a handgun license violates the Second and Fourteenth Amendments." Complaint, Wherefore Clause.[3]

As an initial matter, most, if not all, of Plaintiffs' challenges are subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) due to a lack of standing as Plaintiffs fail to demonstrate that they were actually aggrieved. Plaintiffs do not appear to have been the subject of enforcement action or received any denial of proposed activity. As such, rather than challenging laws and rules that produced a tangible harm, Plaintiffs are asking this Court to preemptively invalidate regulations that they merely deem bad policy. This presents a threshold Article III standing problem.

Plaintiffs' various challenges are based on a complete misunderstanding and misapplication of the Supreme Court's jurisprudence in this area. While the Supreme Court's decision in New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022), resulted in a new analytical framework for Second Amendment claims, this test is not the "regulatory straightjacket" that Plaintiffs believe. Bruen still leaves room for municipalities to enact a variety of regulations to address the country's gun violence epidemic. Moreover, the Bruen test requires a two-part inquiry that shifts the burden to justify the regulation to the municipality *after* threshold requirements are met.

---

[3] Administrative Code § 10-131(a)(2) sets forth an application fee of $340.00 for pistols and revolvers. Administrative Code § 10-303(d)(2) establishes a fee of $140.00 for a rifle and shotgun permit. The Complaint, despite seeking a declaration that requiring a fee to possess a firearm is unconstitutional, references neither Administrative Code § 10-131(a)(2) nor Administrative Code § 10-303(d)(2). For the purposes of this motion, Defendant interprets Plaintiffs' challenge to the fee established by Administrative Code § 10-131(a)(2) (and not Administrative Code § 10-303(d)(2)) since the Complaint alleges Plaintiff Braden Holliday's interest in applying for a handgun. See Complaint ¶¶ 66-67. As discussed in greater detail below, the Complaint is wholly lacking in facts to support an argument that the City's fee is exorbitant on its face (or as applied to Holliday).

Plaintiffs utterly disregard their pleading burden under <u>Bruen</u>.  Plaintiffs treat the first step as a trivial inconvenience and offer only the most conclusory assertions that their ill-defined proposed conduct is protected by the Second Amendment.  Plaintiffs' failure to engage in the textual analysis required by <u>Bruen</u> is a pleading deficiency that warrants dismissal of the Complaint in its entirety.  Moreover, Plaintiffs' claims fail as a matter of law as the challenged firearms regulations do not infringe on their Second Amendment rights.  The rules and laws challenged by Plaintiffs comport with the Second Amendment as they do not infringe on the core right of self-defense, whether in one's home or in public.  Nor do they regulate who may carry a firearm, the process to obtain a license to possess or carry a firearm, the places where a firearm may be carried, or the type of firearms that may be acquired.  Rather, they amount to nothing more than administrative requirements or ancillary restrictions.

For all these reasons, the Complaint is suitable for dismissal in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## ARGUMENT

### POINT I

### PLAINTIFFS LACK STANDING TO ASSERT SECOND AMENDMENT CLAIMS WITH RESPECT TO THE CHALLENGED REGULATIONS AND LAWS

Article III of the United States Constitution serves as a gatekeeper to invoking the jurisdiction of the federal courts.  <u>See Hedges v. Obama</u>, 724 F.3d 170, 188 (2d Cir. 2013).  The doctrine of standing ensures that a plaintiff has a personal stake in the outcome of the litigation.  <u>See Summers v. Earth Island Inst.</u>, 555 U.S. 488, 492 (2009).  This confirms that federal courts hear real controversies, and not generalized grievances about government.  <u>See Gill v. Whitford</u>, 138 S. Ct. 1916, 1929 (2018).  Standing is a "threshold question in every federal case…."  <u>Warth</u>

v. Seldin, 422 U.S. 490, 498 (1975).   To establish standing, a plaintiff must satisfy three elements.   "First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.   Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.   Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."   Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).   Where a challenge occurs prior to any enforcement action, the threatened injury must be "sufficiently imminent."   Adam v. Barr, 792 F. App'x 20, 21 (2d Cir. 2019) (citing Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014)).   The "sufficiently imminent" requirement can be met with plausible allegations that the plaintiff intends to "engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."   Susan B. Anthony List, 573 U.S. at 159-60 (2014) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979).

      (a)    **Plaintiff's Requested Relief is Overbroad as the Complaint Lacks Facts to Support an Injury as to Certain of the Challenged Regulations.**

The Complaint seeks to declare invalid and enjoin provisions that appear to have little relevance to their claims.   Plaintiffs, for example, complain about the prohibition on a licensee's acquisition of more than one firearm every ninety days, which is set forth in Administrative Code § 10-302.1(b).   See Complaint ¶¶ 55-62.   However, they do not properly limit their request for permanent injunctive relief to subsection (b) of Administrative Code § 10-302.1; rather, Plaintiffs additionally seek to enjoin subsections (a) and (c)-(e).   Administrative

Code §§ 10-302.1(c)-(e), however, regulates the *disposition* rather than *acquisition* of firearms. The Complaint does not allege that Charles Mills or Craig Sotomayor are seeking to dispose of any firearms.[4]   As such, they cannot be injured by these provisions and lack standing to challenge them.  Similarly, while Administrative Code § 10-302.1(a) *does* concern acquisition, it is a regulation on dealers in firearms, not purchasers.  The Complaint does not allege that any of the Plaintiffs are licensed firearm dealers; thus, they likewise lack standing to challenge subsection (a) of Administrative Code § 10-302.1.

Plaintiffs' challenge to the entirety of 38 RCNY § 5-25 presents another example of the overbroad nature of the requested relief.  This rule, in addition to establishing the procedure for a licensee to obtain the NYPD's prior authorization to add a new handgun to a license, sets forth in great detail the requirement for a handgun to have a safety locking device. See 38 RCNY §§ 5-25(a)(2)-(3).  Plaintiffs do not allege that the NYPD's requirement of a safety locking device violates the Second Amendment.  Indeed, there is not a single word about this regulation in the Complaint.  Without any facts describing how Plaintiffs are injured by 38 RCNY §§ 5-25(a)(2)-(3), any claim must also fail for lack of standing.

### (b)    Allegations of Hypothetical Future Harm are Insufficient to Establish Standing.

The Complaint also improperly purports to base standing on a *possible* future injury. See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013).  Title 38, § 5-25(d) of the RCNY addresses the number of handguns allowed on a handgun license and sets default limits of two handguns for carry licenses and one handgun for premises licenses.  See 38 RCNY § 5-25(d)(4).   Section 5-25(d)(4)(vi) permits a licensee to seek permission to add additional

---

[4] Since Plaintiff Braden Holliday, by his own acknowledgement, is not licensed by the NYPD to possess firearms, a regulation on the disposition of firearms cannot injure him.

handguns to a premises residence license.  Section 5-25(d)(4)(i) allows the NYPD to limit the number of handguns that appear on a carry license.  Plaintiffs appear to challenge the discretion vested with the License Division by 38 RCNY §§ 5-25(d)(4)(i), (vi).  See Complaint ¶¶ 53-54.  However, the Complaint does not allege that this discretion has injured Plaintiffs through either a denial of a request by Mills or Sotomayor to add additional handguns to a premises residence license or a decision by the License Division to limit Mills or Sotomayor to less than two handguns on a carry license.  The possibility that the NYPD may exercise their discretion under 38 RCNY §§ 5-25(d)(4)(i), (vi) in the future in a manner that aggrieves Plaintiffs is not enough to confer standing at present.  See Ali v. New York City Envtl. Control Bd., 670 Fed. Appx. 26, 27 (2d Cir. 2016) ("Standing is determined based on the litigant's position at the time he filed the complaint.").

Any challenge to 38 RCNY § 5-25(c)(5) would also fail as it is likewise premised on speculative future harm.  This section provides for the cancellation and/or revocation of a handgun license if a licensee fails to return the purchase authorization within ten (10) days of its expiration date.  Neither Mills nor Sotomayor allege the NYPD License Division has suspended or revoked one of their licenses pursuant to 38 RCNY § 5-25(c)(5).  Instead, they appear to complain that such would be the consequence if they fail to comply with the handgun purchase authorization requirement at some point in the future.  But this possibility is much too hypothetical and contains too many variables to establish an injury-in-fact.

The Complaint does not assert that the NYPD has enforced Administrative Code § 10-302.1(b) against Mills through an arrest, summons, or adverse license determination.  Rather, Mills alleges injury from having to wait ninety days between handgun purchases.  Specifically, Mills alleges an intention to purchase a Glock 21 but an inability to do so because

"the transfer of Mr. Mills' Glock 19 from his Premise License to his Carry License triggered the 90-day waiting period for any other transfers/purchases.   On June 23, 2023, Mr. Mills was required to wait 6 more weeks to begin the purchase/permission process with the government...."   Complaint ¶ 90.   The Court can take judicial notice that August 4, 2023, is six weeks from June 23, 2023, and by the date that the Complaint was filed – August 23, 2023 – Mills was eligible to acquire an additional firearm.   In other words, Administrative Code § 10-302.1(b) no longer operated as a barrier to Mills' acquisition of a firearm and he faced no imminent or impending injury, only possible future harm.

**POINT II**

**PLAINTIFFS FAIL TO STATE A CLAIM
UNDER THE SECOND AMENDMENT**

(a)   **Governing Legal Principles**

The Supreme Court's decisions in <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), <u>McDonald v. Chicago</u>, 561 US. 742 (2010), and <u>Bruen</u>, collectively establish that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home and carry a handgun in public for purposes of self-defense. While these decisions reshaped the landscape of Second Amendment jurisprudence, their actual holdings were narrow in scope.   Indeed, the Second Amendment, like other constitutional rights, is not unlimited.   See <u>Heller</u>, 554 U.S. at 626.   It is not a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."   <u>Id</u>.   The Supreme Court recognized that handgun violence is a serious concern in the United States, and asserted that the Constitution leaves policymakers with a number of tools to address this problem.   See <u>id.</u> at 636; <u>Bruen</u>, 142 S. Ct. at 2133 (stating that the Second Amendment is not a "regulatory straightjacket").   "Properly interpreted, the Second Amendment allows a variety of gun

7

regulations." Id. at 2162 (Kavanaugh, *J.*, concurring).   In fact, Heller and Bruen identified a number of "longstanding," "presumptively lawful regulatory measures."   Heller, 554 U.S. at 626-27, n.26, Bruen, 142 S. Ct. at 2133-34, 2138 n.9, 2150, 2162 (Kavanaugh, *J.*, concurring). Further, the Court stated that the regulatory measures identified were not meant to be an exhaustive list. See Bruen, 142 S. Ct. at 2162.

The Court in Bruen dispensed with the two-part means-end scrutiny (whether intermediate or strict scrutiny) applied by many of the federal circuits, and clarified that the Second Amendment "demands a test rooted in the Second Amendment's text, as informed by history." Bruen, 142 S. Ct. at 2127.  The new test formulated by the Court is as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.   The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." Id. at 2129-30 (internal quotation marks and citations omitted).

(b)   **Plaintiffs misconstrue and misapply the first step of the Bruen inquiry.**

The Bruen test set forth above is a textual and historical one.  "Step one … demands a test rooted in the Second Amendment's text…." Id. at 2127.  At step one, the reviewing court must determine "whether the plain text of the Second Amendment protects [Plaintiffs'] proposed course of conduct…." Id. at 2134.  If the answer to this question is in the affirmative, then the court will turn to the historical inquiry.  In other words, if the plain text of the Second Amendment does not demonstrate that the proposed conduct is constitutionally protected, then the analysis ends and the government is not required to engage in a historical

8

inquiry (step two) to show that the challenged law/rule is consistent with our country's tradition of firearm regulation.

Plaintiffs' Complaint demonstrates a fundamental misunderstanding of the test described above in several important ways. First, Plaintiffs do not appreciate that it is their burden to show that their proposed conduct is protected by the Second Amendment in the first instance. Second, Plaintiffs improperly define the proposed conduct with a level of generality so as to render the first Bruen step virtually meaningless. Third, Plaintiffs fail to conduct any textual analysis of the Second Amendment. In sum, Plaintiffs pay lip service to the first part of the Bruen test and attempt to satisfy their pleading burden with bare-bones allegations and formulaic recitals.

### i.   The Burden under Step One Rests with Plaintiffs.

With respect to the initial burden in Second Amendment cases, Bruen itself makes clear that it rests with the plaintiff(s). In formulating the new test, the Supreme Court stated that the government need only justify its regulation once it was demonstrated that an individual's conduct was covered by the plain text of the Second Amendment. See id. at 2129-30. Further, the Court's use of the word "then" in the phrase "[t]he government must then justify its regulation" very clearly signals a burden shifting approach.

Federal courts across the country have applied the first Bruen step consistent with the Supreme Court's carefully chosen language and treated the new test as a burden shifting framework. See, e.g., N.A. for Gun Rights, Inc. v. City of San Jose, No. 22-cv-00501, 2023 U.S. Dist. LEXIS 120797, at *13 (N.D. Cal. July 13, 2023) ("If the conduct at issue is covered by the text of the Second Amendment, the burden then shifts to the government…."); Def. Distributed v. Bonta, No. 22-cv-6200, 2022 U.S. Dist. LEXIS 195839, at *11-12 (C.D. Cal. Oct. 21, 2022); United States v. Brady, No. 22-cr-47, 2023 U.S. Dist. LEXIS 203521, at *3 (N.D. Ind. Nov. 12,

2023) ("When the Second Amendment's plain text protects certain conduct, the burden shifts to the government...."); <u>Boland v. Bonta</u>, No. 22-cv-01421, 2023 U.S. Dist. LEXIS 51031, at *16 (C.D. Cal. Mar. 20, 2023) ("The Constitution presumptively protects Plaintiffs' proposed conduct.  The burden now shifts to the government."); <u>United States v. Deryke</u>, No. 23-cr-92, 2023 U.S. Dist. LEXIS 193043, at *11 (W.D. Mich. Oct. 27, 2023) ("In <u>Bruen</u>, the Court endorsed a burden-shifting framework...."); <u>Oregon Firearms Fed'n, Inc. v. Brown</u>, 644 F. Supp. 3d 782, 799 (D. Or. 2022) ("Therefore, Plaintiffs have failed to show that magazines capable of accepting more than ten rounds of ammunition are covered by the plain test of the Second Amendment."); <u>Rocky Mountain Gun Owners v. Polis</u>, No. 23-cv-01077, 2023 U.S. Dist. LEXIS 137087, at *20 (D. Colo. Aug. 7, 2023) ("After determining that a plaintiff's conduct is covered, the burden shifts to the government...."); <u>United States v. Alston</u>, No. 22-cr-178, 2023 U.S. Dist. LEXIS 189989, at *2 (E.D.N.Y. Oct. 23, 2023).  Moreover, this approach is consistent with the Supreme Court's treatment of First Amendment claims, where the "plaintiff bears certain burdens to demonstrate an infringement of his rights" before the focus turns to the government. <u>Kennedy v. Bermerton Sch. Dist.</u>, 142 S. Ct. 2407, 2421 (2002).

### ii.  Plaintiffs' proposed conduct is ill-defined by the Complaint.

As stated above, the Complaint glosses over the threshold Second Amendment inquiry in an attempt to shift the burden to the City of New York to search for historical analogues.  Plaintiffs make virtually no attempt to define the proposed conduct at issue.  For example, with respect to 38 RCNY § 5-22(8), the Complaint merely states, "Firearm registration requirements are inconsistent with the plain text of the Second Amendment, and this Nation's history and tradition of firearm regulation.  There is no historical analogue for such restrictions." Complaint ¶ 46.  Likewise, as to 38 RCNY § 5-22(7), the Complaint only alleges that the rule is "repugnant to the plain text of the Second Amendment and should be permanently enjoined." <u>Id.</u>

¶ 98.   And Plaintiffs use nearly identical language in support of their claim that license application fees are unconstitutional. See id. ¶ 31 ("Requiring that an individual pay a fee to the government before they can exercise the right to possess and/or carry weapons in common use is repugnant to the plain text of the Second Amendment and inconsistent with text, history, and tradition.").

Plaintiffs appear to be using a blanket approach to defining the proposed conduct, even though the Complaint challenges at least five distinct types of regulations. Specifically, Plaintiffs deem all of the challenged laws and regulations to implicate the mere possession/carrying of a firearm. However, accepting such a general, one-size-fits-all definition would water down the first Bruen inquiry to the point of insignificance. The Supreme Court clearly did not intend for the proposed conduct to be defined so generally that proceeding to the second step was effectively automatic. "For Step One to have any meaning, the regulated conduct must be defined specifically enough that it can meaningfully compare to the Second Amendment's plain text – a plain text that is more complex than mere possession." United States v. Reyna, No. 21-cr-41, 2022 U.S. Dist. LEXIS 225896, at *9 (N.D. Ind. Dec. 15, 2022).

At the outset, it is important to note that the Supreme Court in Bruen did not engage in an exhaustive step one analysis simply because the conduct therein was relatively straightforward and the parties did not dispute that the proposed course of conduct was protected by the Second Amendment. See Bruen, 142 S. Ct. at 2134. Moreover, the textual analysis in Bruen (and Heller) was not complex as the laws in question made it impossible for ordinary, law-abiding citizens to either possess a firearm in the home or carry in public. Even still, the Supreme Court defined the regulated conduct as specifically as possible under the circumstances. See Bruen, 142 S. Ct. at 2134 (carrying handguns publicly for self-defense); Heller, 554 U.S. at

628 (handgun possession in the home).   Federal district courts have followed the Supreme Court's lead by narrowly defining the regulated conduct.   See, e.g., Reyna, 2022 U.S. Dist. LEXIS 225896, at *9 (defining the regulated conduct in a challenge to 18 U.S.C. § 922(k) as "possession of a firearm with an obliterated serial number" rather than simply "possession"); N.A. for Gun Rights, Inc., 2023 U.S. Dist. LEXIS 120797, at *13 (defining the course of conduct as "choosing to keep and bear arms at home without the burden of insuring liability for firearm-related accidents" in a lawsuit concerning the City of San Jose's requirement for gunowners to maintain liability insurance); Oakland Tactical Supply, LLC v. Howell Twp., No. 18-cv-13443, 2023 U.S. Dist. LEXIS 27686, at *6 (E.D. Mich. Feb. 17, 2023) (defining the proposed conduct as "construction and use of an outdoor, open-air 1,000-yard shooting range"); United States v. Bost, No. 21-cr-30, 2023 U.S. Dist. LEXIS 201002, at *6 (W.D. Pa. Nov. 8, 2023) (stating in a challenge to the constitutionality of 18 U.S.C. § 922(j), possession of a stolen firearm, that defendant's proposed conduct was "possession of a stolen firearm"); United States v. Pringle, No. 22-cr-10157, 2023 U.S. Dist. LEXIS 193924, at *7-8 (D. Mass. Oct. 30, 2023) (rejecting defendant's argument that federal statute prohibiting possession of a firearm by a felon regulates mere possession).

Given the above guidance, Plaintiffs' simplistic formulation of the conduct regulated by the statutes and laws challenged in this litigation is clearly wrong.

### iii.   Plaintiffs fail to conduct the textual analysis required by Bruen.

Plaintiffs cannot show that the textual elements of the operative clause of the Second Amendment ("the right of the people to keep and bear Arms, shall not be infringed") cover their proposed conduct.   Following Bruen, it is now clear that self-defense in the event of a confrontation lies at the heart of the Second Amendment, and an individual has a right to possess weapons at home (keep arms) and carry them in public (bear arms), subject to certain

restrictions.  See Bruen, 142 S. Ct. at 2134-35.  Plaintiffs do not, and indeed cannot, demonstrate that the City laws and regulations implicated by this lawsuit actually prevent or at least severely impair the ability of ordinary, law-abiding citizens to either possess a firearm in the home or carry in public.  This is because the Plaintiffs incorrectly believe that every burden, no matter how negligible, on Second Amendment rights is unconstitutional.

              Plaintiffs' faulty reasoning stems from the Complaint's complete omission of the vital phrase "shall not be infringed."  This phrase operates to remove minimal burdens from the ambit of Second Amendment protection.  And the mere fact that a law or rule "regulates" a plaintiff's proposed conduct does not constitute an infringement.  Consistent with Heller and Bruen, to define the meaning of the phrase "shall not be infringed," one must look to the Founding era (or the ratification of the Fourteenth Amendment), and not modern understandings of "infringement."  See Bruen, 142 S. Ct. at 2137.  Indeed, in analyzing the key components of the Second Amendment's operative clause, the Supreme Court in Heller relied on dictionary definitions from the Founding era.  See Heller, 554 U.S. at 581-84.[5]  Those same sources illuminate the meaning of "infringe(d)" at the time.  See Samuel Johnson, A Dictionary of the English Language (1st ed. 1755) (defining "to infringe" as "to violate; to break laws or contracts" or "to destroy; to hinder"), available at https://johnsonsdictionaryonline.com/views/search.php?term=infringe; see also Noah Webster, American Dictionary of the English Language (1828) (defining "infringe" as "to violate, break, transgress"), available at https://archive.org/details/americandictiona01websrich/page/970/mode/2up?q=infringe.  As such, unless a particular statutory provision effectively prevents a law-abiding person from

_____

[5] The Supreme Court did not define "infringed" in Heller, likely because it was indisputable that the District of Columbia's laws "infringed" on the right to possess a handgun in the home for self-defense.

13

exercising their Second Amendment right to keep arms in the home and/or bear arms in public for self-defense, the provision will not be deemed an "infringement."

The Supreme Court's opinion in <u>Bruen</u> appears to have implicitly adopted this definition of "infringed." Therein, the Supreme Court gave its approval to a number of regulations – background checks, fees (as long as not exorbitant), requirement to apply for a license in the first instance (as long as not too lengthy), and requirement to take a firearms safety course – without conducting a historical analysis, thereby indicating that the Court considered such measures to be incidental burdens that do not trigger a step two <u>Bruen</u> inquiry. <u>See Bruen</u>, 142 S. Ct. 2138 n.9, 2162 (Kavanaugh, <i>J.</i>, concurring). District Courts in the wake of <u>Bruen</u> have similarly drawn a distinction between regulations that constitute a complete prohibition on core Second Amendment rights and those that only impose <i>de minimis</i> burdens. <u>See, e.g., Doe v. Bonta</u>, 650 F. Supp. 3d 1062, 1070 (S.D. Cal. 2023) ("What one gleans from these qualifications is that there is a difference between prohibiting a right and regulating the right; so long as the regulation of the right to keep and bear arms doesn't amount to a prohibition of the right, the regulation is permissible."); <u>United States v. Libertad</u>, No. 22-cr-644, 2023 U.S. Dist. LEXIS 117057, at *8 (S.D.N.Y. July 7, 2023) (stating that statutes "which place certain threshold conditions on the acquisition of firearms designed to ensure that those carrying them are lawfully entitled to do so, generally do <u>not</u> infringe the right to keep and bear arms so long as they are not applied to actually prevent law-abiding citizens from obtaining and carrying guns"); <u>Pringle</u>, 2023 U.S. Dist. LEXIS 193924, at *8 (stating that a "de minimis burden on downstream possession rights" does not require a full <u>Bruen</u> analysis) (<u>quoting</u> <u>United States v. Flores</u>, 652 F. Supp. 3d 796, 803 (S.D. Tex. 2023)); <u>B&L Productions, Inc. v. Newsom</u>, No. 21-01718, 2023 U.S. Dist. LEXIS 85629, at *16 (S.D. Cal. Mar. 14, 2023) (dismissing a Second Amendment

claim on a Federal Rule of Civil Procedure 12(b)(6) motion because the complaint failed to state a claim that the challenged law "impede[d] Plaintiffs from acquiring or purchasing firearms or ammunition altogether, amounting to a prohibition of that right.").

(c)    **The laws and rules challenged herein do not infringe upon Plaintiffs' Second Amendment rights.**

Once Plaintiffs' proposed conduct is properly defined, and the above understanding of what constitutes an "infringement" of Second Amendment rights is applied to that correctly defined proposed conduct, it is evident that the laws and regulations challenged in the Complaint do not infringe upon Plaintiffs' Second Amendment rights.

i.    **Administrative Code § 10-302.1(b)**

Plaintiffs' challenge to the ninety day waiting period set forth in Administrative Code § 10-302.1(b) cannot advance beyond the first part of the Bruen test.[6] Rather than mere possession, the conduct regulated by Administrative Code § 10-302.1(b) is as follows: purchasing more than one firearm within ninety days or acquiring additional firearms without any limitation on the rate of acquisition. Such conduct is not protected by the text of the Second Amendment.

Clearly, Administrative Code § 10-302.1(b) places no restriction at all on the carrying of firearms; for example, it says nothing about who may carry a firearm, the process to obtain a license to carry, or the places where a firearm may be carried. Thus, to prevail, Plaintiffs must argue that the law burdens the keeping of arms. It does not. Administrative Code

---

[6] According to the Declaration of Legislative Findings and Intent accompanying Local Law 31 of 2006, which amended Administrative Code § 10-302.1(b), the federal Bureau of Alcohol, Tobacco, Firearms and Explosives "found that purchase of multiple handguns at the same time are a strong indicator of straw purchases and, therefore, of illegal handgun trafficking." https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=446074&GUID=F012A2A3-F5B1-4DD2-92EA-B5C5A3BAF1E0&Options=ID|Text|&Search=31. (Local Law 31 can be accessed at this webpage by clicking on Attachment Number 7 "Local Law.").

§ 10-302.1(b) does not prevent a licensee from making an initial purchase of a firearm. It also does not prevent subsequent purchases. Nor does the rule provide an outer limit on the number of firearms that one may purchase and possess (not that such a restriction would implicate the Second Amendment) – a licensee may acquire up to four firearms each year (and, after ten years, for example, could own forty firearms without running afoul of the law). Administrative Code § 10-302.1(b) simply regulates the frequency in which licensees may acquire firearms after their first purchase. Since the law does not does not prevent anyone from purchasing firearms for self-defense, possessing them for such purpose, or using them in the event of a confrontation, it does not implicate the text of the Second Amendment or infringe on the core of the right defined in Heller, McDonald, and Bruen, thereby obviating the need to identify historical analogues.

### ii.   Administrative Code § 10-131(a)(2)

With respect to application fees, the Supreme Court appears to have already conducted the threshold analysis in Bruen. As discussed above, fees, so long as they are not exorbitant, are constitutional. Critically important, the Supreme Court left open the possibility of a constitutional challenge only when an exorbitant fee "den[ies] ordinary citizens their right to public carry." Bruen, 142 S. Ct. 2138 n.9. This language further demonstrates that an infringement occurs only if a regulation – in this case a fee – operates so as to completely deny law-abiding, responsible citizens their Second Amendment rights. There is simply no basis to conclude that the City's application fee prevents the exercise of the right of self-defense.

The Supreme Court's fee jurisprudence permits the imposition of a fee to offset or defray the municipality's expense in regulating the protected activity. See Kwong v. Bloomberg, 876 F. Supp. 2d 246, 254 (S.D.N.Y. 2012), aff'd, 723 F.3d 160 (2d Cir. 2013), cert. denied, 572 U.S. 1149 (2014). In Kwong, the Second Circuit upheld the $340 license application fee mandated by Administrative Code § 10-131(a)(2) in response to a Second Amendment challenge

because the fee was, at most, a marginal restraint on Second Amendment rights. See Kwong, 723 F.3d at 167. The Second Circuit also found "that the $340 licensing fee is designed to defray (and does not exceed) the administrative costs associated with the licensing scheme." Id. at 166.

There is no reason to believe that Kwong is not good law as a result of Bruen. For one thing, Bruen only questioned exorbitant fees. Plaintiffs' request for a declaration that anything but, *perhaps*, a nominal fee is unconstitutional therefore, finds no support in Bruen. Second, in the decade since the Second Circuit decided Kwong, there has been no increase to the $340 fee despite inflationary pressure, salary increases, and the new investigatory requirements imposed by the Concealed Carry Improvement Act in 2022 ("CCIA"). Under the CCIA, in connection with an application for a concealed carry permit, licensing officers must, among other things, review character references, conduct an interview with the applicant, and confirm that the State's training requirement, consisting of sixteen hours of in-person live curriculum and two hours of live-fire training, has been satisfied. See New York Penal Law ("Penal Law") §§ 400.00(1), (19). Thus, not only has the cost to the City of processing firearms applications not decreased since Kwong was decided, those costs are arguably considerably greater post-Bruen. Finally, federal courts continue to rely on Kwong when considering fee challenges. See, e.g., Koons v. Platkin, No. 22-cv-7463, 2023 U.S. Dist. LEXIS 85235, at *100-101 (D. N.J. May 16, 2023) ("A law does not substantially burden a constitutional right simply because it makes the right more difficult or expensive to exercise."); New York State Firearms Association v. Nigrelli, No. 23-cv-6524, Docket Entry No. 9 (W.D.N.Y. Sept. 21, 2023) (denying temporary restraining order against background check fees associated with the purchase of ammunition and, in the process, distinguishing the Supreme Court's decision in Harper v. Virginia State Bd. of

Elections, 383 U.S. 663 (1966), which is cited by Plaintiffs in paragraphs 72-73 of the Complaint).[7]

Even if Kwong is no longer binding precedent as to the constitutionality of Administrative Code § 10-131(a)(2), the Complaint still fails to establish that the $340 licensing fee is objectively exorbitant so as to "deny ordinary citizens their right to public carry." The Complaint is completely devoid of facts to support the conclusion that $340 is an exorbitant application fee. Plaintiffs instead rely on mere conclusory statements and legal conclusions, neither of which are sufficient to survive a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Booker v. City of New York, No. 14-cv-9901, 2017 U.S. Dist. LEXIS 5451, at *4 (S.D.N.Y. Jan. 13, 2017); Hudson v. City of New York, No. 15-cv-4920, 2016 U.S. Dist. LEXIS 82637, at *3-4 (S.D.N.Y. June 23, 2016). Plaintiffs cite to inapposite case law, as stated in the above paragraph, and make bold and unsupported statements such as "[a]ny requirement that an individual pay money to the government to exercise the constitutional right to self-defense is unconstitutional" and "[n]o other constitutional right requires paying the government money before [it] may be lawfully exercised." Complaint ¶¶ 25, 28.

For all these reasons, Plaintiffs' cause of action as to the constitutionality of the City's handgun licensing fee should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[8]

---

[7] This decision is annexed to the Declaration of Nicholas R. Ciappetta ("Ciappetta Declaration") as Exhibit 1.

[8] To the extent Holliday is asserting an as-applied challenge to Administrative Code § 10-131(a)(2), and to the extent that as-applied challenges to licensing fees are cognizable under the Second Amendment, the Complaint is likewise deficient. There are simply no facts as to Holliday's financial status, such as his income, expenses, and assets. Nor are there any facts demonstrating that he is so financially destitute that he cannot afford the $340 fee, which covers a license term of three years. Finally, Holliday does not explain how he could afford to acquire a firearm and ammunition, but cannot pay the application fee.

### iii.   38 RCNY § 5-25(d)(4)

Plaintiffs are attempting to frame 38 RCNY § 5-25(d)(4) as a limitation on the number of handguns that a licensee may *own*. This is a misreading of the regulation. While this section contains *default* limits on the number of handguns that may be *listed* on premises residence and concealed carry licenses, this is not a functional cap on how many handguns the licensee may *own*. Title 38, Section 5-24(d)(4)(vi) permits a licensee to request that additional handguns be listed on a premises residence license and provides that the License Division *shall* grant such request as long as the licensee demonstrates "appropriate safeguarding and establishes compliance with … subdivision (b) of § 10-302.1 of the Administrative Code…." As such, Mills, who possesses both a carry and premises residence license (see Complaint ¶ 78), may utilize 38 RCNY § 5-25(d)(4)(vi) to own *and* list an unrestricted number of handguns on his premises residence license. For that reason, with respect to Plaintiffs' challenge to 38 RCNY § 5-25(d)(4), the proposed conduct should be defined as follows:  listing an unlimited number of handguns under a concealed carry license.  Plaintiffs appear to believe that the Second Amendment permits a limitless number of handguns under a carry license. This conduct is not protected by the text of the Second Amendment.

38 RCNY §§ 5-25(d)(4)(i), (vi) does not even minimally burden core conduct protected by the Second Amendment. With respect to the possession of a handgun in the home, licensees may continually add new handguns to their premises residence license subject to compliance with certain objective requirements. See 38 RCNY § 5-25(d)(4)(vi). And the use of the phrase "shall be approved" in 38 RCNY § 5-25(d)(4)(vi) means that the License Division's review is largely ministerial. Nor does 38 RCNY §§ 5-25(d)(4)(i) place restrictions on an individual's ability to publicly carry a handgun. The rule does not regulate the type of weapon that may be carried, the location where a licensee may carry, impose license requirements, or, as

in Bruen, restrict who can obtain a carry license.  While 38 RCNY § 5-25(d)(4)(i) does limit to two the number of handguns that can be listed on a carry license, the licensee has the flexibility to choose which of the two handguns to carry in public at a given time.  Moreover, the licensee may change the handguns listed on the carry license or swap handguns listed on any premises residence license with the handguns listed on the carry license.  In sum, 38 RCNY § 5-25(d)(4)(i) simply requires a gun owner to obtain a premises residence license to possess more than two handguns.  However, "nothing in Bruen, Heller, or McDonald prevent the City from requiring gun owners to obtain multiple licenses, one for the home and one to carry in public...." Knight v. City of New York, No. 22-cv-10755, Docket Entry No. 40 (S.D.N.Y. Nov. 20, 2023) (recommending Defendant's motion to dismiss plaintiff's Second Amendment challenge to 38 RCNY § 5-25(d)(4)(i) be granted).[9]

Since 38 RCNY §§ 5-25(d)(4)(i), (vi) does not prevent anyone from keeping or bearing arms, the conduct at issue is not protected by the text of the Second Amendment and the City is not required to provide historical analogues to demonstrate consistency with the Nation's tradition of firearm regulations.

### iv.     38 RCNY § 5-22(a)(7)

Title 38, Section 5-22(a)(7) of the RCNY states that "[i]f a licensee has a "Carry" or "Special Carry" type license only one (1) handgun may be carried on their person at any time."  By its terms, this rule obviously has nothing to do with the possession of a firearm for self-defense purposes at home.  While 38 RCNY § 5-22(a)(7) does implicate the public carry of a handgun, as discussed in Point II(b)(ii) above, it is an error for Plaintiffs to define the conduct

---

[9] This is a Report and Recommendation from Hon. Valerie Figueredo, United States Magistrate Judge, to Hon. Valerie E. Caproni, United States District Judge that has not yet been adopted.  A copy of this Report and Recommendation is annexed to the Ciappetta Declaration as Exhibit 2.

regulated by the rule as generally as "carrying in public." Rather, Plaintiffs' proposed conduct is better defined as follows:  carrying more than one handgun in public or carrying an unlimited number of handguns in public.

This more precise (and correct) formulation of the proposed conduct at issue does not violate the Second Amendment.   Once again, the distinction between regulation and infringement is outcome determinative.   In Bruen, the Supreme Court invalidated New York State's Sullivan Law that made it impossible for law-abiding citizens with ordinary self-defense needs from exercising their self-defense needs.  The law infringed on the Second Amendment because it amounted to a flat-out ban on the issuance of a carry license to anyone who could not demonstrate a special need for self-protection.  See Bruen, 142 S. Ct. at 2122.  Put differently, the Sullivan Law operated under the assumption that carrying in public for self-defense was a privilege rather than a right.  Title 38, Section 5-22(a)(7) of the RCNY, in contrast, does not prevent the exercise of the right to public carry by ordinary law-abiding, responsible citizens. Unlike the Sullivan Law, Title 38, Section 5-22(a)(7) does not set forth any requirement for the issuance of a carry license.  Rather, it is, as the rule's title states, a condition of issuance.   While the Sullivan Law restricted the carrying of *any* handgun whatsoever by law-abiding citizens with ordinary self-defense needs, 38 RCNY § 5-22(a)(7) merely limits a licensee to carrying one handgun at a time.  And a licensee may clearly use this handgun for self-defense purposes in the event of a confrontation in public.[10]

Since a limit on the number of handguns that a licensee may publicly carry does not restrict the issuance of a license in the first instance, or prevent the licensee from defending

---

[10] Nor does the rule impose any restriction on the amount of ammunition that a licensee may carry in public.

themselves, Title 38, Section 5-22(a)(7) is not an infringement of Second Amendment rights so as to shift the burden to the government under Bruen's second step.

### v.   Handgun Purchase Authorization Requirement

Plaintiffs also object to the NYPD's requirement to obtain prior written authorization before obtaining a handgun (or replacing a handgun) even though they fail to allege any instance in which such authorization was denied or excessively delayed.[11]   Nor does the Complaint even allege that any of the plaintiffs are actively engaged in the handgun purchase authorization process.     Putting these standing problems aside, once again, the NYPD's requirement does not nearly rise to the level of an infringement on Second Amendment rights.

Plaintiffs' proposed conduct can be described as follows:  obtaining a handgun without prior written authorization from the NYPD's License Division.  Here the textual inquiry that the Complaint entirely neglects is simplified because Bruen has already given clear direction on this matter.  As stated above, Bruen endorsed "shall-issue" licensing regimes, and certain of their licensing requirements, that ensure licenses are granted only to "law-abiding responsible citizens."  See Bruen, 142 S. Ct. at 2138 n.9. Title 38, § 5-25 of the RCNY simply ensures that the handgun that the licensee seeks to list on its license is compliant with New York State and New York City law and was lawfully acquired.[12]   Ensuring that the handgun is legal in New York City and was lawfully purchased is consistent with the Supreme Court's repeated assertion

---

[11] The handgun purchase authorization requirement is codified at 38 RCNY § 5-25.  This requirement is also cross-referenced at 38 RCNY §§ 5-22(a)(9), (10).  Accordingly, this section of the memorandum of law addresses Plaintiffs' challenge to all of these provisions collectively.

[12] New York City law prohibits the possession of deceptively colored firearms/rifles/shotguns and assault weapons.  See Administrative Code § 10-131(j).  New York State law also criminalizes the possess of assault weapons.  See Penal Law § 265.02(7).

that only law-abiding, responsible citizens are entitled to keep and bear arms.[13]  In other words, it would be illogical to permit licensing officials to inquire as to whether an applicant is a law-abiding responsible citizen, yet prohibit a review as to the legality of the arms that the licensee intends to use in furtherance of its Second Amendment rights.

Additionally, it is important to once again emphasize the limited nature of what Bruen actually decided.  The Supreme Court found New York State's Sullivan Law problematic because it required "applicants to show an atypical need for armed self-defense...."  See Bruen, 142 S. Ct. at 2138 n.9.  That is all the Court decided.  See id. at 2157 (Alito, J., concurring).  It did not automatically invalidate every application requirement or every rule governing the conduct of licensees.  The handgun purchase authorization requirement is far afield from the type of regulation that troubled the Supreme Court.  The handgun purchase authorization process is not a requirement of licensure and in fact occurs *after* the License Division has determined that the applicant is entitled to the issuance of a license.[14]  See 38 RCNY § 5-25(a).  Nor does the process entail the exercise of judgment or the formation of an opinion by licensing officials, concerns that led the Supreme Court in Bruen to invalidate the challenged law.  Rather, the request to obtain a handgun shall be approved so long at the handgun is legal and was lawfully acquired.  The License Division is not authorized to deny a request because the licensee has not demonstrated a special need for self-defense.

---

[13] Between the majority and concurring opinions in Bruen, the Court repeated the term "law-abiding" eighteen (18) times.

[14] With respect to a first-time licensee, 38 RCNY § 5-25 governs the licensee's initial acquisition of a handgun.  Once the handgun purchase authorization process is complete, the License Division will issue the physical license with the handgun(s) listed on the back thereof.  Plaintiffs Mills and Sotomayor are existing licensees with valid licenses.  As such, they already possess handguns and the purchase authorization process set forth in 38 RCNY § 5-25 only controls the acquisition of additional handguns.

While the handgun purchase authorization requirement does implicate the acquisition of weapons, it amounts to nothing more than a *de minimis* threshold condition that does not thwart the exercise of Second Amendment rights.[15]   Therefore, the proposed conduct falls outside the scope of the Second Amendment and the analysis can end at the first step of Bruen.

  **vi.**  **38 RCNY § 5-22(a)(8)**

Lastly, Plaintiffs seek to nullify 38 RCNY § 5-22(a)(8), which provides that a licensee "is authorized to own only the handgun(s) that are listed on their license."   This challenge may be dismissed with little discussion as the regulation is largely related to the default limits on the number of firearms that may be listed on a license set by 38 RCNY § 5-25(d)(4) and the handgun purchase authorization requirement discussed above.   In other words, those regulations already require that any handgun owned by a licensee be listed on a license and approved by the License Division prior to acquisition.   As such, 38 RCNY § 5-22(a)(8) does not add any new substantive regulation not found elsewhere in the RCNY.   Thus, for the reasons set forth in Point II(c)(iii),(v) above, 38 RCNY § 5-22(a)(8) does not regulate conduct protected by the Second Amendment and Plaintiffs' claim fails as a matter of law.

---

[15] The burden is even more minimal for Mills and Sotomayor as they are current licensees who already possess firearms to provide self-defense in the event of a confrontation at home or in public.  At worst, the handgun purchase authorization requirement slightly delays their acquisition of an additional firearm.

## **CONCLUSION**

As discussed extensively herein, Plaintiffs' Complaint is fatally flawed.  Plaintiffs lack an injury-in-fact to challenge most, if not all, of the laws and regulations at issue.  Even if Plaintiffs do have standing, the regulated conduct is not protected by the text of the Second Amendment and the challenges fail at the first step of the Bruen test.  For all the reasons set forth herein, the court should grant Defendant's motion to dismiss the Complaint in its entirety.[16]

Dated:        New York, New York
              December 8, 2023


Respectfully submitted,

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York
Attorney for Defendant
100 Church Street
New York, New York 10007
(212) 356-4036

By:   _____
        Nicholas Ciappetta (NC 1014)
        Assistant Corporation Counsel

---

[16] If the Court does not dismiss the Complaint in full, Defendants will seek discovery to further explore Plaintiffs' standing and identify historical analogues that show consistency with the Nation's historical tradition of firearm regulation.