UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CHARLES MILLS, CRAIG SOTOMAYOR,
BRADEN HOLLIDAY,

        Plaintiffs,     23 Civ. 7460 (PAC) (OTW)

   -against-

NEW YORK CITY, New York,
        Defendant.
-------------------------------------------------------------------x


# PLAINTIFFS' MEMORANDUM OF LAW

# IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS


**THE BELLANTONI LAW FIRM**
***Attorneys for Plaintiffs***
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES.................................................................................................... i

PRELIMINARY STATEMENT........................................................................................... 1

LEGAL STANDARD ........................................................................................................... 2

ARGUMENT .......................................................................................................................... 3

I. PLAINTIFFS HAVE ARTICLE III STANDING ........................................................... 3

    A. 38 RCNY 5-25.......................................................................................................... 4

    B. NYC Admin. Code 10-302.1(a) and (c)-(e) .......................................................... 4

    C. 38 RCNY 5-22(a)(7), (8), (9), (10) ........................................................................ 5

    D. Plaintiffs Suffered Actual Harm and Will Continue to Suffer Actual Harm ................. 5

II. THE COMPLAINT STATES PLAUSIBLE CLAIMS FOR RELIEF ....................................... 8

    A. The Complaint Sufficiently Alleges Violations of Protected Conduct........................... 8

    B. The *Bruen* Test Imposes No Greater Burden on Plaintiffs............................................. 9

    C. The *Bruen* Test Does Not Require Plaintiffs to Plead (or Prove) That the City's
    Regulations "Actually Prevent or At Least Severely Impair the Ability of Law-Abiding
    Citizens to Either Possess a Firearm in Their Home or Carry in Public".......................... 13

    D. Whether Second Amendment Rights Are "Infringed" Is Determined By Whether The
    Government's Regulations Are Consistent With the Plain Text, the Nation's Historical
    Traditions, and Supreme Court Precedent – A Burden the Government is Required to
    Bear Under *Bruen*. ......................................................................................................... 14

    E. The Cases Cited In Support of Defendant's Balancing Test Are Inapposite and/or
    Were Decided Pre-*Bruen* ................................................................................................ 15

CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonyuk v. Chiumento,*
  89 F.4th 271 (2d Cir. 2023)..................................................................................... 3, 7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................... 2, 3

*B&L Prods., Inc. v. Newsom,*
  661 F. Supp. 3d 999 (S.D. Cal. 2023)........................................................................ 16

*Buday v. N.Y. Yankees P'ship,*
  486 F. App'x 894 (2d Cir. 2012)................................................................................. 2

*Carter v. HealthPort Techs.,* LLC,
  822 F.3d 47 (2d Cir. 2016).......................................................................................... 2

*Cayuga Nation v. Tanner,*
  824 F.3d 321 (2d Cir. 2016)......................................................................................... 7

*Conyers v. Rossides,*
  558 F.3d 137 (2d Cir. 2009)........................................................................................ 2

*Doe v. Bonta,*
  650 F. Supp. 3d 1062 (S.D. Cal. 2023)..................................................................... 15

*Farbstein v. Hicksville Pub. Libr.,*
  254 F. App'x 50 (2d Cir. 2007)................................................................................... 3

*Kachalsky v. County of Westchester,*
  701 F.3d 81 (2d Cir. 2012) abrogated by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) ............................................ 14

*K.S. v. City of New York,*
  2023 WL 6608739 (S.D.N.Y. Oct. 10, 2023) ............................................................. 3

*Knight v. City of New York,*
  2023 WL 8260114 (S.D.N.Y. Nov. 20, 2023)............................................................ 18

*Koons v. Platkin,*
  2023 WL 3478604 (D.N.J. May 16, 2023) ................................................................ 17

*Kwong v. Bloomberg,*
  876 F. Supp. 2d 246 (S.D.N.Y. 2012)........................................................................ 17

*Lopez v. Jet Blue Airways*,
   662 F.3d 593 (2d Cir. 2011) ................................................................ 3

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ........................ 2

*Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.*,
   647 F. Supp. 3d 286 (S.D.N.Y. 2022) .................................................. 2

*Nat'l Ass'n for Gun Rts., Inc. v. City of San Jose*,
   618 F. Supp. 3d 901 (N.D. Cal. 2022) ................................................ 11

*New York State Firearms Ass'n v. Nigrelli*,
   2023 WL 8495198 (W.D.N.Y. Sept. 21, 2023) .................................... 17

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   142 S.Ct 2111 (2022) ................................................................... 9, 10

*Oakland Tactical Supply, LLC v. Howell Twp., Michigan*,
   2022 WL 3137711 (6th Cir. Aug. 5, 2022) ........................................ 11

*Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*,
   896 F.2d 674 (2d Cir. 1990) ............................................................... 2

*Selevan v. New York Thruway Authority*,
   584 F.3d 82 (2d Cir.2009) .................................................................. 2

*Tweed-New Haven Airport Auth. v. Tong*,
   930 F.3d 65 (2d Cir. 2019) ................................................................. 7

*United States v. Bost*,
   2023 WL 7386567 (W.D. Pa. Nov. 8, 2023) .................................... 12

*United States v. Gore*,
   2023 WL 2141032 (S.D. Ohio Feb. 21, 2023) .................................. 12

*United States v. Libertad*,
   2023 WL 4378863 (S.D.N.Y. July 7, 2023) ...................................... 15

*United States v. Pringle*,
   2023 WL 7135176 (D. Mass. Oct. 30, 2023) ............................... 12, 16

*United States v. Reyna*,
   No. 21-cr-41, 2022 U.S. Dist. LEXIS 225896, at *9 (N.D. Ind. Dec. 15, 2022) ..................... 10

*Vitagliano v. County of Westchester*,
    71 F.4th 130 (2d Cir. 2023) ................................................................................................ 7


**Statutes**

18 U.S.C. 922(a)(2) and (3) ................................................................................................ 15, 16
18 U.S.C. 922(g) ................................................................................................................ 12
18 U.S.C. 922(j) ................................................................................................................ 12
18 U.S.C. 922(k) ................................................................................................................ 10


**Regulations**

38 RCNY 5-25 ................................................................................................................ 3, 4
38 RCNY 5-25(a) ................................................................................................................ 1
38 RCNY 5-25(d) ................................................................................................................ 1, 5
38 RCNY 5-22(8) ................................................................................................................ 1
38 RCNY 5-25(d)(4)(i) ................................................................................................................ 6
38 RCNY 5-25(c)(5) ................................................................................................................ 6, 7
38 RCNY 5-22(a)(7), (8), (9), (10) ................................................................................................ 5
38 RCNY 5-22(a)(7), (8), (9), and (10) ................................................................................................ 5
38 RCNY 5-25(d)(4)(i) and (iv), 5-25(c)(5) ................................................................................................ 5
38 RCNY § 5-25(d)(4)(i) ................................................................................................................ 18


**Other Authorities**

NYC Admin. Code 10-131 ................................................................................................................ 17
NYC Admin. Code 10-302.1(a), (b) ................................................................................................ Passim
NYC Admin. Code § 10-311(a) ................................................................................................................ 4

## PRELIMINARY STATEMENT

Plaintiffs Charles Mills ("Mills"), Craig Sotomayor ("Sotomayor"), and Braden Holliday ("Holliday") or collectively ("Plaintiffs"), submit the within Memorandum of Law in opposition to the Motion to Dismiss filed by defendant New York City (the "City" or "Defendant").

Mills and Sotomayor are licensed handgun owners. Mills holds a New York City handgun Premises License, a Concealed Carry License, and a Rifle/Shotgun License.[1] Sotomayor holds a New York State unrestricted concealed carry license and a New York City Carry License.[2] Holliday is a resident of the City, a law-abiding person, and has no disqualifiers to firearm possession; he challenges the City's application fees.[3]

The Complaint challenges the following New York City regulations and policies: (i) the City's licensing fees; (ii) 38 RCNY 5-25(a) [permission to purchase a handgun]; (iii) 38 RCNY 5-22(8) [handgun registration requirement]; (iv) 38 RCNY 5-25(d) [number of handguns owned/registered to a particular license]; (v) NYC Admin. Code 10-302.1(a), (b) [one transfer or purchase every 90 days][4,5] ; and (vi) Section 5-22(a)(7) [restricts number of handguns one can carry for self-defense][6] and seeks declaratory, injunctive, compensatory, and other relief for violations of Plaintiffs' rights as protected by the Second and Fourteenth Amendments to the United States Constitution.

---

[1] Complaint at ¶¶77-80;

[2] Complaint at ¶¶99-101.

[3] Complaint at ¶¶64-70.

[4] NYC Admin. Code 10-302.1(f) exempts from the 90-day waiting period individuals who also happen to be employed as law enforcement officers and/or peace officers - who have no limitation on the number of handguns, rifles, and shotguns they can purchase, receive, and/or transfer for their personal use. [Complaint at ¶62].

[5] Violating NYC Admin. Code 10-302.1 is a Class A misdemeanor, punishable by up to 1 year incarceration, $1,000 fine, 3 years of probation, and license revocation. [Complaint at ¶63].

[6] Violating 5-22(a)(7) is a Class A misdemeanor, punishable by up to 1 year incarceration, $1,000 fine, 3 years of probation, and license revocation. [Complaint at ¶63].

## **LEGAL STANDARD**

Notably, the City omitted from its Memorandum of Law any discussion of the legal standards for considering a motion to dismiss. As set forth below, Plaintiffs satisfy the standards for standing under Article III, and the Complaint states plausible claims for violations of Plaintiffs' Second Amendment rights, warranting denial of Defendant's motion.

### *Rule 12(b)(1)*

The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists. *Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.*, 647 F. Supp. 3d 286, 290 (S.D.N.Y. 2022), appeal dismissed (June 20, 2023) citing, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the Court should resolve the Rule 12(b)(1) challenge first. *Id.* citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

In deciding a Rule 12(b)(1) motion at the pleading stage, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," except for "argumentative inferences favorable to the party asserting jurisdiction." *Id.* quoting *Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).

When a defendant challenges the facial sufficiency of a complaint under 12(b)(1), the plaintiff has no evidentiary burden. *Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 56 (2d Cir. 2016). The task of the district court is to determine whether the complaint "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue. *Id.* (internal brackets

omitted) citing *Selevan v. New York Thruway Authority*, 584 F.3d 82, 88 (2d Cir.2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### *Rule 12(b)(6)*

To defeat a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. When determining a 12(b)(6) motion, the allegations in the complaint are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Farbstein v. Hicksville Pub. Libr.*, 254 F. App'x 50 (2d Cir. 2007). "For now, the task is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. *K.S. v. City of New York*, No. 21-CV-04649 (PAC), 2023 WL 6608739, at *8 (S.D.N.Y. Oct. 10, 2023) quoting *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (quotation marks omitted).

## ARGUMENT

## I. PLAINTIFFS HAVE ARTICLE III STANDING

To establish Article III standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Antonyuk v. Chiumento*, 89 F.4th 271, 307 (2d Cir. 2023).

Defendant's Article III challenge is limited to an alleged (i) a lack of facts to support an injury under 38 RCNY 5-25[7] and NYC Admin. Code 10-302.1(a) and (c)-(e)[8]; and (ii) standing insufficiency based on hypothetical future harm.[9] As set forth below, the City's arguments fail.

**A. 38 RCNY 5-25**

Defendant complains that Plaintiffs' challenge to 38 RCNY 5-25, entitled "Handgun Purchase Authorizations and Safety Locking Device Requirements" is overbroad because there are no facts to support a challenge to the safety locking device requirement of 5-25. (City Br. at 5).

Fatal to Defendant's argument is the fact that there is no safety locking device requirement contained in section 5-25. The only reference to safety locking devices in 5-25 is to *another regulation* - NYC Admin. Code § 10-311(a)[10]. Section 5-25(a)(2) simply advises of the types of safety locking devices that "will be deemed to comply" with NYC Admin. Code § 10-311(a).[11]

Similarly, 5-25(a)(3) *refers* to NYC Admin. Code § 10-311(b) - signage requirements for licensed manufacturers, importers, and licensed dealers. The Complaint does not challenge § 10-311(b).

Defendant does not challenge Plaintiffs' standing to pursue their claims against the remaining provisions of 38 RCNY 5-25, thereby conceding Plaintiffs' standing.

**B. NYC Admin. Code 10-302.1(a) and (c)-(e)**

Defendant claims (incorrectly) that Plaintiffs lack Article III standing to challenge NYC Admin. Code 10-302.1(a) because the regulation affects dealers, not purchasers; and (c)-(e) because those provisions "regulate the *disposition* rather than the *acquisition* of firearms."[12]

---

[7] City Br. at p. 5.
[8] City Br. at pp. 4-5.
[9] City Br. at pp. 5-7.
[10] The Complaint does not challenge § 10-311(a).
[11] https://codelibrary.amlegal.com/codes/newyorkcity/latest/NYCrules/0-0-0-135651
[12] City Br. at p. 5.

But the City's argument is disingenuous – an *acquisition* simultaneously involves a *disposition* by a licensed firearm dealer/gun store. Under 10-302.1(h), *any* violation of the regulation by a licensed firearm dealer will result in the revocation of the dealer's license – in addition to the penalties that will be suffered by the dealer under the criminal penalties of section 10-310.[13] Subsections (c)-(e) place restrictions on gun stores that have a direct impact on Mills who has suffered harm from, and challenges the enforcement of, *inter alia*, the 90-day requirement for handgun transfers. Complaint at ¶¶85-91; ¶¶55-62.

So, even if the regulations relating to licensees and purchasers challenged by Plaintiffs were declared unconstitutional and enjoined, and/or if Plaintiffs were successful in their damages claims for constitutional violations from the enforcement of 10-302.1(b), if violated, 10-302.1(a), (c)-(e) bring criminal penalties against the licensed firearm dealers and causes the revocation of their licenses [see, 10-302.1(h)] - continuing to enforce the effect of 10-302.1(b).

Defendant does not challenge Plaintiffs' standing to pursue their claims concerning NYC Admin. Code 10-302.1(b), thereby conceding Article III standing.

**C.  38 RCNY 5-22(a)(7), (8), (9), (10)**

Defendant raises no Article III challenge to Plaintiffs' claims against 38 RCNY 5-22(a)(7), (8), (9), and (10), thereby conceding Article III standing.

**D.  Plaintiffs Suffered Actual Harm and Will Continue to Suffer Actual Harm**

Defendant challenges Plaintiffs' standing under Article III as to 38 RCNY 5-25(d)(4)(i) and (iv), 5-25(c)(5), and NYC Admin. Code 10-302.1(b) alleging (incorrectly) that Mills and Sotomayor have only alleged future harm and have not suffered any actual harm.

---

[13] https://codelibrary.amlegal.com/codes/newyorkcity/latest/NYCadmin/0-0-0-219628;
https://codelibrary.amlegal.com/codes/newyorkcity/latest/NYCadmin/0-0-0-219634#JD_10-310

38 RCNY 5-25(d) is entitled, "Number of handguns allowed on a handgun license" limits the number of handguns one can possess and/or carry – as no handgun can be possessed or carried without a license. So, the limitation on the number of handguns one can have registered to their license(s) necessarily means a limitation on the number of handguns one can possess and/or carry. Mills and Sotomayor are already subject to and continue to suffer constitutional harm under this regulation.

38 RCNY 5-25(d)(4)(i) caps the number of handguns allowed on one's concealed carry license to two (2). Meaning that no matter how many handguns one owns / has registered to or listed on their Premise (residence) License, the regulation prevents Mills and Sotomayor from carrying their handguns for self-defense outside of their home - and forces a limitation of two. Plaintiffs challenge the entire regulation, not just the "discretion" imbued in the License Division. [City Br. at p. 6].

Mills' and Sotomayor's injuries are not speculative. Both own handguns that are licensed but cannot be carried in public for self-defense because of the City's regulations, which only allow a maximum of two (2) handguns to be listed on one's carry license. None of the other handguns owned by Mills and Sotomayor can be carried for self-defense, even though they are legally owned and licensed. Mills and Sotomayor have announced their present intention to utilize handguns that they own but that are not also listed on their carry licenses by carrying them in public for self-defense. Complaint at ¶¶82-98; ¶¶101-104.

The two-handgun limit on a carry license enforced by the NYPD at the time the Complaint was filed, the regulations remain in effect, have not been repealed, and will continue to be enforced until enjoined by the Court.

38 RCNY 5-25(c)(5) entitled, "Purchasing an additional handgun" requires permission from the government to purchase a new handgun. Plaintiffs object to the requirement that they seek and obtain the government's permission to buy a new handgun, and they do not have to wait to be denied permission by the City to challenge the regulation.

A plaintiff challenging a firearm regulation "is not required to first comply with the objected-to component before bringing suit." *Antonyuk,* at 311 (it "contravenes common sense" to require a plaintiff to submit to the very firearm regulations he challenges in order to find Article III standing exists, allowing the plaintiff to challenge the disclosure requirements without first making the required disclosures). Mills and Sotomayor do not have to comply with 5-25(c) to have Article III standing to challenge the regulation's requirements.

Mills has suffered actual harm by having to comply with 38 RCNY 5-25(c)(5) in the past and, because he intends to purchase handguns in the future, he should not have to continue to suffer harm by continued compliance. Complaint at ¶88.

With regard to NYC Admin. Code 10-302.1(b), Defendant claims that Plaintiffs lack standing because they have not alleged that NYPD has enforced the regulation against them. [City Br. at 6]. But *Antonyuk* confirmed Article III's "low threshold" for standing and reiterated that plaintiffs have no burden to show an intent by the government to enforce the law against them; rather, intent is "presumed in the absence of a disavowal by the government." *Antonyuk*, at *39 (citation omitted); accord *Vitagliano v. County of Westchester*, 71 F.4th 130, 138 (2d Cir. 2023) ("[W]here a statute specifically proscribes conduct, the law of standing does not place the burden on the plaintiff to show an intent by the government to enforce the law against it." (quoting *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019)). Indeed, "courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent

and not moribund." *Id.* at *39-40 quoting *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (citation omitted) (rejecting any requirement for Article III standing that a plaintiff must establish that they have been threatened with certain prosecution)."

And notwithstanding Defendant's claim that NYC Admin. Code 10-302.1(b) "no longer operated as a barrier to Mills' acquisition of a firearm and he faced no imminent or impending injury, only possible future harm" [City Br. at p. 7], 10-302.1(b) was, in fact, enforced against Mills, Mills suffered constitutional harm as a result of the enforcement of 10-302.1(b), and because Mills "has purchased handguns in the past and intends to purchase additional handguns in the future" [Complaint at ¶88] his continued constitutional harms from the enforcement of NYC Admin. Code 10-302.1(b) are concrete.

## II. THE COMPLAINT STATES PLAUSIBLE CLAIMS FOR RELIEF

### A.  The Complaint Sufficiently Alleges Violations of Protected Conduct

The Complaint pleads detailed factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Defendant fabricates and attempts to impose requirements on Plaintiffs that have no support in the plain text of the Second Amendment or Supreme Court jurisprudence, including under the *Bruen* test.

Defendant cites **no** authority for the proposition that Plaintiffs must "conduct a textual analysis" of the Second Amendment [City Br. at p. 9]. The allegations pled, which must be taken as true, sufficiently demonstrate that the conduct being regulated implicates Plaintiffs' right to keep (possess) and bear (carry) firearms – conduct protected by the plain text of the Second Amendment.

Lacking any ability to justify its regulations, as *Bruen* requires, Defendant desperately attempts to create its own version of Second Amendment analysis. If believed, this fictional distraction will insulate Defendant from its legal obligations.

**B.  The *Bruen* Test Imposes No Greater Burden on Plaintiffs**

The test set forth in *Bruen* is uncomplicated: "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct 2111, 2126, 2129-30 (2022).

The plain text of the Second Amendment covers the conduct being regulated by the City – the possessions and carriage of firearms for self-defense. Defendant fabricates burdens for this Court to impose on Plaintiff that find no support in the plain text, Supreme Court precedent, or this Nation's historical traditions and is, itself, repugnant to the plain text of the Second Amendment. Each of the challenged laws are part of the City's licensing scheme. *De facto*, licensing regulations implicate the possession (keeping) and carriage of (bearing) handguns (arms).

Defendant cites no requirement under *Heller, McDonald,* or *Bruen* to support its theory that the protected "conduct" is to be defined according to the regulation being challenged yet insists that Plaintiffs are taking a "blanket approach" to defining the proposed conduct." [City Br. at p. 11].

9

But Plaintiffs have no burden to "define" their proposed conduct any further than alleging that their ability to possess and/or carry firearms  (the covered conduct by the plain text) is implicated by the City's regulations. Requiring citizens to apply for and obtain the government's permission to acquire firearms, preventing individuals from utilizing their firearms for self-defense in public, preventing citizens from carrying more than one firearm on their person, placing an arbitrary temporal limitation on the number of handguns an individual can acquire and/or transfer – all impact and implicate the right to keep and/or bear firearms.

Defendant's theory attempts to place *Defendant's* burden on Plaintiffs' shoulders. In other words, Defendant alleges that Plaintiffs must demonstrate, for example, that the right to acquire or transfer more than one firearm in a 90-day time period is protected by the Second Amendment – a made-up test that turns the Second Amendment, *Heller, McDonald,* and *Bruen* on their heads. All manner of keeping and bearing is protected by the plain text until the government proves that it is not – by meeting its burden of proving that the regulation is consistent with this Nation's historical tradition of regulating arms.  *Bruen*, at 2126.

The cases cited by Defendant are inapposite, as none involve the lawful possession and carriage of weapons in common use for self-defense nor can they be interpreted to apply (or even contemplate) the burden Defendant presses this Court to place on Plaintiffs:

- *U.S. v Reyna*,  No. 21-cr-41 ,2022 U.S. Dist. LEXIS 225896, at *9 (N.D. Ind. Dec. 15,2022) is a criminal case involving possession of a handgun with an obliterated serial number in violation of 18 U.S.C. § 922(k) because the plain text of the Second Amendment does not reach handguns without serial numbers, which are not "weapons in common use." (the Second Amendment does not apply to weapons

that are "uncommon or unusually dangerous or not typically used by law-abiding people for lawful purposes";

- *Nat'l Ass'n for Gun Rts., Inc. v. City of San Jose*, 618 F. Supp. 3d 901, 913 (N.D. Cal. 2022) [City Br. at p. 12] did not "define" the plaintiffs' course of conduct in the context of analyzing whether they had met their burden under *Bruen*. When holding that the Second Amendment claim was not ripe, the district court simply commented that "paying a fee that is merely associated with owning a firearm— and for which the failure to pay does not result in that ownership being revoked…would not necessarily be inconsistent with the 'historical tradition of firearm regulation.'" By analogy, the fee required in *N.A. for Gun Rights* did not affect the plaintiffs' possession of firearms, as failure to pay "does not result in that ownership being revoked." Thus, the challenged regulation did not implicate the right to possess or carry firearms, unlike those challenged here.

- *Oakland Tactical Supply, LLC v. Howell Twp., Michigan*, No. 21-1244, 2022 WL 3137711, at *2 (6th Cir. Aug. 5, 2022) involved a corporate plaintiff's challenge to a local ordinance negatively affecting their ability to operate as a gun range. Because the district court record was not developed sufficiently for the Circuit Court to assess whether Oakland Tactical's proposed course of conduct – operating a gun range - is conduct "covered by the plain text of the Second Amendment," and, if so, to "then determine whether historical evidence—to be produced by the Township in the first instance—demonstrates that the Ordinance's shooting-range regulations are consistent with the nation's historical tradition of firearm regulation."

11

- *United States v. Bost*, No. 2:21-CR-30-CCW, 2023 WL 7386567, at *3 (W.D. Pa. Nov. 8, 2023) involved, *inter alia*, a criminal defendant's challenge 18 U.S.C. 922(j) for possession of a stolen firearm. The district court held that the Second Amendment does not protect possession of a stolen firearm citing *United States v. Gore*, No. 2:23-cr-04, 2023 WL 2141032, at *4 (S.D. Ohio Feb. 21, 2023) ("[T]he Second Amendment guarantees 'the right to keep and bear arms [for] lawful purposes,' and this Court can think of no lawful purpose for which a private citizen would knowingly possess a stolen firearm.") (cleaned up). Again, the defendant's proposed conduct was criminal in nature – thus, not protected by the Second Amendment.[14]

- *United States v. Pringle*, No. CR 22-10157-FDS, 2023 WL 7135176, at *1 (D. Mass. Oct. 30, 2023) is likewise a challenge to federal criminal statutes, including the felon-in-possession statute under 18 U.S.C. § 922(g). Based on the facts underlying the pleading instrument (indictment), the court determined that the conduct as alleged – criminal conduct - was not protected by the plain text of the Second Amendment.

But **none** of the aforementioned cases implements, or contemplates, imposing upon Plaintiffs the mutated version of *Bruen*'s step one pressed by Defendant.

Consistent with *Heller, McDonald,* and *Bruen*, the aforementioned cases make clear that the conduct implicated by the challenged regulations and protected by the plain text of the Second Amendment, is the possession and carriage of weapons in common use for lawful purposes.

---

[14] In *Bost*, the government nevertheless provided "sufficient historical analogues under *Bruen*. *Bost*, at *3 citing ECF No. 124 at 14; *Gore*, 2023 WL 2141032, at *4 (finding the government presented "numerous" historical analogues to § 922(j)); *Lewis*, 2023 WL 4604563, at *18 (same).

And none of the cases involving individual plaintiffs, as opposed to corporate plaintiffs, required the plaintiff (or defendant in challenges to criminal statutes) to "conduct a textual analysis" [City Br. at p. 12] or to define the proposed conduct any further than "possessing" or "bearing" arms. And not one of the cases was dismissed or adjudicated based on the plaintiff's (or criminal defendant's) failure to adequately "define" the proposed conduct.

The Supreme Court has reiterated time and again that the Second Amendment applies to the "law-abiding." Plaintiffs are law-abiding. Mills and Sotomayor have already been issued licenses [Complaint at ¶¶77-80, 99-101] and Holliday "age 31, is an African American man and a resident of the Bronx," has no prohibitors to the possession of firearms and is one of "the People" for whom the Second Amendment was written," that if he applied to the NYPD License Division for a license to possess and/or carry firearms, he would be approved." [Complaint at ¶¶64-65].

The challenged regulations are preventing the free exercise of the right to possess and/or carry weapons in common use for self-defense by law-abiding Plaintiffs. Plaintiffs have no further burden under the *Bruen* test.

### C.  The *Bruen* Test Does Not Require Plaintiffs to Plead (or Prove) That the City's Regulations "Actually Prevent or At Least Severely Impair the Ability of Law-Abiding Citizens to Either Possess a Firearm in Their Home or Carry in Public"[15]

Attempting to resurrect some version of a balancing test, despite the Supreme Court's abolition thereof, Defendant claims that Plaintiffs have an obligation to plead (and/or prove) that the challenged regulations "prevent" or "severely impair" the ability of law-abiding citizens to either possess a firearm in their home or carry in public. [City Br. at p. 13].

---

[15] City Br. at p. 13. Nor is Holliday required to disclose his financial status. [City Br. at n. 8]. While requiring the payment of any fee as a condition of exercising a guaranteed individual right tied to one's self-defense, the Complaint identifies the exorbitance of the City's fees by reference to Penal Law § 400.00(14), which caps the licensing fee for every county except Nassau County and New York City at a **nominal amount of $10.** The statute also provides no authority for any licensing officer to collect a fingerprinting fee (a fee that no criminal defendant arrested by the NYPD has **ever** been charged).

Defendant's theory is reminiscent of *Kachalsky v. Cnty. of Westchester*[16], a case **abrogated by Bruen** based on its unconstitutional test for Second Amendment challenges where "heightened scrutiny is triggered only by those restrictions that (like the *complete prohibition* on handguns struck down in *Heller*) operate as a *substantial burden* on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful purposes)." (emphasis added).

*Bruen* imposes no such requirement. And the majority rejected this second step, where "courts often analyze how close the law comes to the core of the Second Amendment right and the **severity of the law's burden on that right**." *Bruen*, at 2126 (emphasis added).

### D.  Whether Second Amendment Rights Are "Infringed" Is Determined By Whether The Government's Regulations Are Consistent With the Plain Text, the Nation's Historical Traditions, and Supreme Court Precedent – A Burden the Government is Required to Bear Under *Bruen*.

Adding more mud to a clear stream, Defendant hijacks the text "shall not be infringed" to skirt its burden to justify its regulations under *Bruen* [City Br. at 13-24] then spends close to 10 pages improperly advancing an interest balancing test to press the conclusion that its regulations are *de minimis* and, therefore cannot be an "infringement" of Plaintiffs' Second Amendment rights.[17] Defendant's "infringement" theory is constitutionally unsound and must be rejected in its entirety. [18]

---

[16] 701 F.3d 81, 93 (2d Cir. 2012), abrogated by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022).

[17] By asserting that "the distinction between regulation and infringement is outcome determinative," Defendant reveals the impropriety of its arguments. [City Br. at p. 21]. Faced with a sure loss, Defendant resorts to changing the meaning of words to compel its success, rather than the truth. Defendant has created a self-serving definition of "infringement" that encompasses nothing short of an "outright ban," and asserts that the word "regulations" are no more than *de minimis* inconveniences. But since balancing tests have been abrogated, Defendant cannot escape the burden of providing evidence that its regulations are consistent with the plain text, history, and tradition of the Second Amendment.

[18] For example, Defendant admits that the handgun purchase authorization requirement "does implicate the acquisition of weapons" but shrugs it off as a *de minimis* regulation [City Br. at 24]. Defendant is still required to justify the constitutionality of its regulations.

Noted above, *Heller, McDonald,* and *Bruen* **preclude all manner of balancing in Second Amendment challenges**. See, *Bruen*, at 2126 – 2130 (*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. *Heller*'s methodology centered on constitutional text and history. It did not invoke any means-end test such as strict or intermediate scrutiny, and it expressly rejected any interest-balancing inquiry).

*Bruen* rejected balancing tests that "analyze how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Bruen*, at 2126-27 ("Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history. But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context.").

Defendant's "infringement theory" is improperly reintroduces the second step of the intermediate scrutiny test rejected by *Bruen*. It must also be rejected by this Court.

### E.  The Cases Cited In Support of Defendant's Balancing Test Are Inapposite and/or Were Decided Pre-*Bruen*

The cases upon which Defendant relies to advance a defiant return to interest balancing tests rejected by *Bruen* are, in any event, inapposite.

- *Doe v. Bonta*, 650 F. Supp. 3d 1062, 1067 (S.D. Cal. 2023), currently on appeal, involved a challenge to California's disclosure to non-government researchers personal identification information that they were compelled to furnish as a precondition to purchasing firearms and ammunition or obtaining a CCW permit.

- *United States v. Libertad*, No. 22-CR-644 (JSR), 2023 WL 4378863, at *1 (S.D.N.Y. July 7, 2023), was a criminal case challenging a criminal statute prohibiting interstate transportation of firearms in violation of 18 U.S.C. § 922(a)(3). The requirement that

transfers be conducted through a federally licensed dealer or other specified means to advance the idea that only law-abiding individuals will be in possession of firearms. But Plaintiffs are already licensed and engaging in lawful conduct protected by the Second Amendment.

- As noted above, *United States v. Pringle*, No. CR 22-10157-FDS, 2023 WL 7135176, at *1 (D. Mass. Oct. 30, 2023) challenged federal criminal statutes, including 18 U.S.C. 922(a)(2) and (3). *Pringle* improperly determined that a balancing test to determine the level of impact involved could dispense with the *Bruen* test. *Pringle* also relied on cases that were either decided pre-*Bruen* or unappealed district court cases that also improperly continued balancing the individual's rights against the government's interest in violation of *Bruen*. That said, *Pringle* was concerned with regulations enacted to prevent "non-law-abiding individuals" from accessing firearms. Mills and Sotomayor are already deemed law-abiding as borne out by their having been issued firearm licenses. And because all licensed firearm dealers are required to conduct a federal background check, their purchase of a new handgun and, *inter alia*, their right to carry their lawfully owned handguns in public for self-defense are violated by the City's regulations.[19]

- *B&L Prods., Inc. v. Newsom*, 661 F. Supp. 3d 999, 1007 (S.D. Cal. 2023) involved gun show operators challenging California's regulations on the commercial sale of firearms; it did not involve individuals seeking redress for Second Amendment violations.

---

[19] In connection with the language in the aforementioned cases, recall that *Heller* rejected governmental arguments that the availability of "alternatives" are sufficient to overcome Second Amendment challenges. *Heller*, at 629. ("It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed." The City's imposition of a "You get what you get and you don't get upset" mentality to constitutional rights is inconsistent with the plain text of the Second Amendment, which "shall not be infringed."

- *Kwong v. Bloomberg*, 876 F. Supp. 2d 246, 247 (S.D.N.Y. 2012), aff'd, 723 F.3d 160 (2d Cir. 2013), decided close to a decade before *Bruen*, involved a challenge to Defendant's licensing fees under NYC Admin. Code 10-131 at the summary judgment stage. *Kwon* embodies the application of the "interest balancing" tests rejected by *Heller, McDonald,* and *Bruen* and, therefore, lends no support to Defendant's motion. Under *Bruen*, Defendant must prove that its regulation is consistent with the plain text of the Second Amendment, and "to the extent later history contradicts what the text says, the text controls." *Bruen*, at 2137.[20]

- *Koons v. Platkin*, No. CV 22-7463 (RMB/AMD), 2023 WL 3478604, at *33 (D.N.J. May 16, 2023) failed to hold the government to its burden under *Bruen* to justify its fee regulations, conducted no historical analysis, and improperly relied on this Circuit's pre-

- *New York State Firearms Ass'n v. Nigrelli*, No. 23-CV-6524-FPG, 2023 WL 8495198, at *3 (W.D.N.Y. Sept. 21, 2023) involved a challenge to, *inter alia*, the fees imposed by gun stores related to background checks when purchasing ammunition. Notably, the court found that the plaintiffs' conduct was covered by the plain text – even though "ammunition" is not specifically identified in the plain text. But the plaintiffs had no likelihood of success on the merits because the fees were imposed upon the plaintiffs by the gun stores, not by the government.

---

[20] Amusingly, Defendant asserts "Plaintiffs appear to believe that the Second Amendment permits a limitless number of handguns under a carry license." The Second Amendment does not grant any rights it codified *pre-existing* rights – the "*guaranteed individual right* to possess and carry weapons" [*Heller*, at 592]. This codification **restricts the government's conduct – not Plaintiffs'**. Indeed, requiring a permissive license to possess, acquire, and/or carry firearms is repugnant to the plain text. Had *Bruen* applied its own test to licensing requirements, the result would have been the elimination of all licensing schemes. Over half of the states in the U.S. have come into constitutional compliance in that regard. https://worldpopulationreview.com/state-rankings/constitutional-carry-states

- The flaws in the Report and Recommendation issued in *Knight v. City of New York*, No. 22CV10755VECVF, 2023 WL 8260114, at *4 (S.D.N.Y. Nov. 20, 2023) begin with the *pro se* plaintiff's pleading, which "alleges that the city regulation restricts and substantially burdens an individual's right to keep and bear arms." From there the district court proceeded to [improperly] conduct a balancing test contrary to Supreme Court precedent. The R&R notes that the possession of arms is not implicated by 38 RCNY § 5-25(d)(4)(i), which limits the number of handguns eligible to be carried for self-defense (listed on a carry license to two (2) – but improperly defines the conduct too narrowly. The text of the Second Amendment protects "keeping" and "bearing" – not micro-subdivisions of those rights. The City's regulation implicates the right to bear arms and the R&R's discussion of "minimal burdens" is improper.[21]

Defendant's "infringement theory," balancing tests, and proffered excuses for the existence of its regulations all require outright rejection under *Heller, McDonald,* and *Bruen*.  In genuine Lingchi style, Defendant's regulations are intended to cause the slow and painful death of the Second Amendment in New York. If the City is not forced to justify its regulations, as required by *Bruen*, the City will micromanage the Second Amendment into extinction.

---

[21] To soften the blow of its regulations, Defendant proffers that Mills "may change the handguns listed on the carry license or swap handguns listed on any premises residence license with the handguns listed on the carry license" [City Br. at p. 20].  More balancing and excuses in the absence of being held to its legal burden of proof under *Bruen* to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation" because *only then* "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, at 2126.

"We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all."

*Heller*, at 634.

## CONCLUSION

Defendant's motion should be dismissed in its entirety.

Dated: January 22, 2024
      Scarsdale, New York

                    THE BELLANTONI LAW FIRM, PLLC
                    *Attorneys for Plaintiffs*

By:       *Amy L. Bellantoni*
                    2 Overhill Road, Suite 400
                    Scarsdale, New York 10583
                    abell@bellantoni-law.com