23 CV 7460 (PAC)(OTW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES MILLS, CRAIG SOTOMAYOR, and BRADEN HOLLIDAY,

Plaintiffs,

- against -

NEW YORK CITY, New York,

Defendant.

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

*SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Nicholas R. Ciappetta*
*Tel: (212) 356-4036*

MICHELLE GOLDBERG-CAHN,
NICHOLAS R. CIAPPETTA,
Of Counsel.

## PRELIMINARY STATEMENT

Defendant, by its attorney, Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, submits this reply memorandum of law in further support of its motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

In this litigation, Plaintiffs challenge a number of long-standing City laws and rules promoting firearm safety, many, if not all of which, have not injured Plaintiffs and may never injure them. As such, this lawsuit appears to be an attempt by Plaintiffs to invalidate laws and rules that they merely find inconvenient or objectionable. But antipathy or inconvenience is not the governing constitutional standard. The United States Supreme Court has repeated that handgun violence is a serious concern and that the Second Amendment permits a variety of regulations to address this problem. See District of Columbia v. Heller, 554 U.S. 570, 626-27, 636; New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 30, 38 n.9, 80-81 (Kavanaugh, J., concurring) (2022).

Plaintiffs ignore this guidance from the Supreme Court and seem to contend that all laws and rules regulating firearms after Bruen are null and void. Plaintiffs attempt to extinguish the latitude provided municipalities under the Second Amendment by rewriting the Bruen standard. While Bruen calls for a textual *and* historical analysis, Plaintiffs' application of the test would effectively nullify the threshold question and require a historical exploration of analogues in every single case, no matter how minimal the burden on Second Amendment rights. Plaintiffs' reinvention of the Second Amendment test ignores the fact that the Supreme Court has identified numerous "presumptively lawful regulatory measures" without conducting any historical inquiry. Plaintiffs further disregard the text of the Second Amendment, particularly the phase "shall not be infringed", which is rendered meaningless by their analysis. As such, the

Complaint fails to demonstrate that Plaintiffs' proposed conduct is protected by the Second Amendment and their claims are not legally plausible.

Plaintiffs' opposition papers fail in any way to diminish the strength of Defendant's argument that it is entitled to dismissal of all claims in this action. Thus, for the reasons set forth in Defendant's initial moving papers, and the additional reasons advanced herein, the City is entitled to dismissal of all claims asserted in the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## ARGUMENT

### POINT I

**PLAINTIFFS LACK STANDING TO ASSERT SECOND AMENDMENT CLAIMS WITH RESPECT TO THE CHALLENGED REGULATIONS AND LAWS**

The City's motion to dismiss asserts that Plaintiffs failed to adequately plead standing to challenge many of the rules and laws at issue in this case. Plaintiffs' opposition papers misstate Defendant's arguments and fail to squarely respond to others. Still other arguments posited by Plaintiffs simply make no sense.

Defendant noted at the outset that Plaintiffs challenged the entirety of lengthy firearm regulations, including sections that appear to be irrelevant to their claims. See Defendant's Memorandum of Law in Support of Motion to Dismiss the Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Defendant's Memo") at 4-5. For example, 38 RCNY § 5-25 contains numerous subdivisions, some of which have nothing to do with the New York City Police Department's handgun authorization requirement. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiffs' Opposition")

does not more precisely identify the portion(s) of 38 RCNY § 5-25 that they seek to invalidate. See Plaintiffs' Opposition at 4.

Similarly, Plaintiffs challenge New York City Administrative Code ("Administrative Code") §§ 10-302.1 (a)-(e) even though subdivisions (a) and (c)-(e) regulate the *disposition* rather than the *acquisition* of firearms and *dealers* not *purchasers*. Plaintiffs Mills and Sotomayor allege that they seek to acquire firearms, not dispose of them, and are licensed to possess firearms, not sell them. Therefore, they are not injured by Administrative Code §§ 10-302.1(a) or (c)-(e). Plaintiffs' response is virtually nonsensical and incoherent. First, they state that "an *acquisition* simultaneously involves a disposition by a licensed firearm dealer/gun store." Plaintiffs' Opposition at 5. This statement is unexplained and inaccurate. An individual licensed by the NYPD to possess/carry firearms is not required to dispose of a firearm in order to acquire a new/additional firearm. Second, Plaintiffs argue that, "if violated, 10-302.1(a), (c)-(e) bring criminal penalties against the licensed firearm *dealers* and causes the revocation of *their* licenses [see, 10-302.1(b)] – continuing to enforce the effect of 10-302.1(b)." Id. (emphasis added). This sentence from Plaintiffs' Opposition clearly demonstrates that the criminal and revocation penalties set forth in Administrative Code §§ 10-302.1(a) and (c)-(e) apply to dealers, not purchasers like Plaintiffs. Moreover, even if Administrative Code §§ 10-302.1 (a) and (c)-(e) were invalidated, Administrative Code §§ 10-302.1(b) would still operate as a prohibition to the acquisition by Mills and Sotomayor of more than one firearm every ninety days. Accordingly, Plaintiffs' "injury" would not be redressable by a favorable decision with respect to Administrative Code §§ 10-302.1 (a) and (c)-(e) alone.

Defendant further argued that Plaintiffs alleged nothing more than hypothetical future harm with respect to 38 RCNY §§ 5-25(d)(4)(i), (vi), 38 RCNY § 5-25(c)(5), and

Administrative Code § 10-302.1(b). See Defendant's Memo at 5-7. The Complaint is wholly lacking in allegations that any of the Plaintiffs experienced enforcement action by law enforcement or any discretionary denials by the NYPD's License Division. Plaintiffs' Opposition alleges that Mills is harmed by 38 RCNY § 5-25(c) and Administrative Code § 10-302.1(b) because he intends to purchase handguns in the "future." Plaintiffs' Opposition at 7-8. This allegation is a classic example of a vague "someday intention" that traditionally has been held insufficient to support Article III's standing requirements. See Gazzola v. Hochul, 88 F.4th 186, 203 n. 9 (2d Cir. 2023); Summers v. Earth Island Institute, 555 U.S. 488, 496 (2009); Saba Cap. CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund, 88 F.4th 103, 111 (2d Cir. 2023).

Plaintiffs also mistakenly rely on the Second Circuit's recent decision in Antonyuk v. Chiumento, 2023 U.S. App. LEXIS 32492, at *67 (2d Cir. Dec. 8, 2023), for the proposition that "[a] plaintiff challenging a firearm regulation 'is not required to first comply with the objected-to component before bringing suit.'" Plaintiffs, however, take this statement entirely out of context. The Second Circuit drew a distinction between eligibility criteria and application requirements. See id. Antonyuk addressed standing from the perspective of a plaintiff who alleges that a component of the application process deterred him/her from submitting an application in the first place. See id. at *56-57, 63-64, and 67. More narrowly, the Second Circuit found a cognizable injury from the Concealed Carry Improvement Act's disclosure requirements that direct applicants to provide the government with certain information. In contrast, the rules and laws challenged herein do not require the forced disclosure of information about an applicant's family and associates as well as social media user

names. Plaintiffs' attempt to broaden the standing principles elucidated by the Second Circuit and graft them onto completely distinct regulations must be rejected.

## POINT II

### PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SECOND AMENDMENT

In addition to standing, Defendant's motion to dismiss focused on the Complaint's legal implausibility with respect to Plaintiffs' Second Amendment claim. Specifically, the City argued that the Second Amendment claims cannot advance beyond the threshold inquiry under Bruen of whether the text of the Second Amendment protects the conduct at issue. Defendant identified three ways in which the Complaint misapplies Bruen's first step. "First, Plaintiffs do not appreciate that it is their burden to show that their proposed conduct is protected by the Second Amendment in the first instance. Second, Plaintiffs improperly define the proposed conduct with a level of generality so as to render the first Bruen step virtually meaningless. Third, Plaintiffs fail to conduct any textual analysis of the Second Amendment." Defendants' Memo at 9. And for each of these three areas, the Defendant's Memo contained detailed analysis with citations to extensive case law and/or historical sources. Plaintiffs dismiss Defendant's first step discussion by falsely arguing that the City has invented a Second Amendment test in conflict with Bruen. Plaintiffs, however, are the ones misreading Bruen and fail to cite a single case in support of their Bruen interpretation.

Plaintiffs do not appear to dispute that it is their burden to show that the challenged laws and rules implicate the text of the Second Amendment. Instead, they contend that "Defendant cites ***no*** authority for the proposition that Plaintiffs 'must conduct a textual analysis' of the Second Amendment [City Br. at p. 9]." Plaintiffs' Opposition at 8 (emphasis in original). This argument is plainly wrong and requires little discussion. The Supreme Court in

5

Bruen confirmed in no uncertain terms that Heller established a "text-and-history standard." 597 U.S. at 39. The Court also stated that step one "demands a test rooted in the Second Amendment's text...." Id. at 19. Thus, Plaintiffs cannot erase the "text" portion of the "text-and-history" standard.

Next Plaintiffs take issue with Defendant's argument that their proposed conduct must be defined more precisely. See Plaintiffs' Opposition at 9-13. Here, once again, Defendant cited to a plethora of case law and Plaintiffs cited to none in connection with their claim that defining the proposed conduct as mere possession is sufficient. In all of the cases cited by Defendant, the proposed conduct is defined in terms of the regulation being challenged. See Defendant's Memo at 11-12.[1] Plaintiffs further state that "licensing regulations implicate the possession (keeping) and carriage of (bearing) handguns (arms)." Id. at 9. Plaintiffs' formulation of their step one burden would completely neuter this part of the Bruen test and require municipalities to search for historical analogues in every case, regardless of how minimally burdensome the regulation at issue is. Bruen does not require this. Indeed, the Supreme Court recognized broad categories of regulations that it deemed "presumptively lawful" without identifying historical analogues. See Heller, 554 U.S. at 626-27, n.26, Bruen, 597 U.S. at 30, 38 n.9, 80-81 (Kavanaugh, J., concurring).

Lastly, Plaintiffs fail to offer an alternative to Defendant's definition of "infringed." Instead, they bizarrely accuse the City of attempting to "resurrect some version of a balancing test...." Plaintiffs' Memo at 13. But it is the Plaintiffs, not Defendant, who are not faithfully applying the Bruen test. The City has not added words to the text of the Second

---

[1] Plaintiffs summarily dismiss these decisions as being wrongly decided or inapposite because they are criminal cases or concern different types of regulations. But Defendants cited these cases to illustrate how courts define the proposed conduct and conduct a meaningful step one review that is not the type of perfunctory analysis that Plaintiffs urge this court to undertake.

Amendment. As stated above, the Second Amendment contains the phrase "shall not be infringed." Bruen requires that the words of the Second Amendment be analyzed and given meaning. The Supreme Court's trilogy of cases has defined the core conduct protected by the Second Amendment. Accordingly, Plaintiffs must demonstrate that the challenged City laws and rules infringe on that core conduct. Neither the Complaint nor Plaintiffs' Opposition addresses this issue. Plaintiffs instead state in conclusory terms that the City laws and rules implicate possessing and bearing arms. In contrast, Defendant's Memo addresses each of the challenged laws and rules in turn in significant detail, describing why those regulations do not prevent or even impair a law abiding citizen from possessing a firearm in the home or carrying in public for the purpose of self-defense.

## CONCLUSION

For all the reasons set forth herein, as well as in Defendant's initial moving papers, the Second Amendment claims are dismissible due to a lack of standing and/or failure to establish the first element of the Bruen test, and the court should grant the City's motion in its entirety.[2]

Dated:     New York, New York
           February 20, 2024

---

[2] If the Court does not dismiss the Complaint in full, Defendants will seek discovery to further explore Plaintiffs' standing and identify historical analogues that show consistency with the Nation's historical tradition of firearm regulation.

7

Respectfully submitted,

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York
Attorney for Defendant
100 Church Street
New York, New York 10007
(212) 356-4036

By: _____
Nicholas Ciappetta (NC 1014)
Assistant Corporation Counsel