UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
MILLS et al,                        :
    Plaintiffs,                     :
                           :    23-cv-07460 (JSR)
    -v-                             :    OPINION AND ORDER
                           :
NEW YORK CITY, NEW YORK             :
                           :
    Defendant.                      :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

    Before this Court is the motion of defendant New York City (the "City") seeking to dismiss the complaint (the "Complaint") filed by three individual plaintiffs: Charles Mills, Braden Holliday, and Craig Sotomayor. The Complaint alleges that a wide swath of the City's firearm regulations in Title 38 of the Rules of the City of New York ("38 R.C.N.Y.") and in the City's Administrative Code ("N.Y.C. Admin. Code") restricts conduct protected by the Second and Fourteenth Amendments of the United States Constitution. Plaintiffs request declaratory and injunctive relief as well as nominal and compensatory damages. On December 8, 2023, the City moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim (Dkt. 13). Plaintiffs opposed (Dkt. 19). By "bottom-line order" dated September 25, 2024, the Court granted the City's motion to dismiss in full (Dkt. 26). This Opinion sets forth the reasons for that ruling and reconfirms that Order.

## BACKGROUND

All plaintiffs reside in New York State. Complaint ¶ 3-5 (Dkt. 1)("Compl."). Holliday is a thirty-one-year-old African American male and a resident of the Bronx. Id. ¶ 64. He alleges that he attempted to obtain a handgun license from the License Division of the New York Police Department's ("N.Y.P.D.") — the department responsible for processing and issuing firearm licenses — but he learned that obtaining such a license was conditioned on his paying a mandatory application fee of $340 (and a corresponding tri-yearly renewal fee in the same amount), as well as an additional one-time fingerprinting fee of $88.50. Id. ¶¶ 29-30, 65-71. All of these fees, he alleges, are unconstitutional restrictions on his Second Amendment right to possess a gun.

Mills is a resident of Queens and, as required by the City's regulations, he holds two New York City licenses — a license to keep guns in his home (a "premise license") and a license that authorizes him to purchase, own, and carry a concealed handgun on his person (a "carry license"). Id. ¶¶ 77-78. Under the City's regulations, Mills is required to register every handgun that he owns on one of his licenses. Id. ¶ 81. Mills alleges that, even though he has multiple guns registered to his premise license, he is unconstitutionally limited to registering only two of those guns to his carry license at the danger of his carry license being revoked and him being found guilty of a Class A Misdemeanor for violation of the relevant regulation, should he exceed this limit. Id. ¶¶ 82-84. Further, Mills

also alleges that the City's regulations unconstitutionally limit him to carrying only one handgun on his person and that if it were not for these regulations, he would have carried a backup handgun on a regular basis. Id. ¶¶ 92-98. Mills also alleges that when he tried to purchase/transfer/receive more than one firearm, he could not do so because every gun shop in New York City is statutorily prohibited from selling anyone more than one handgun within 90 days. Id. ¶ 85. Similarly, Mills also alleges that when he bought a new handgun and wanted to add that handgun to his carry license, he was unconstitutionally required to wait for 90 days. Id. ¶¶ 86-88, 90. And finally, Mills alleges that he has specific plans to purchase a Glock 21 from Woodhaven Rifle & Pistol shop, which he claims he would have already done if he: (1) was not required to wait for 90 days since his last handgun purchase/transfer; or (2) could have reached anyone in N.Y.P.D.'s License Division to obtain a Purchase Authorization Form, which he alleges was unavailable at N.Y.P.D.'s website at that time. Id. ¶¶ 88-89.

The third plaintiff, Sotomayor, is a twenty-three-year-old Nassau County resident. Id. ¶ 99. He possesses an "unrestricted (full carry) New York State concealed carry handgun license" issued in Nassau Country. Id. ¶ 100. But for Sotomayor to carry a handgun in the City, the City's regulations require him to apply for a Special License designated for non-city residents with valid county carry licenses. Id. ¶ 101. Sotomayor alleges that he possesses an "impressive and sizeable handgun collection" but is unconstitutionally "forced to

choose two handguns from his collection to register to his Special Carry License" and prohibited from carrying a backup gun. Id. ¶¶ 102-114.

Based on the foregoing facts, plaintiffs allege that the following regulations restrict conduct protected by the Second and Fourteenth Amendments:

- The requirement to obtain authorization from the N.Y.P.D. prior to a purchase or an acquisition of a handgun, see 38 R.C.N.Y. §§ 5-25(a), 5-25(c), 5-22(9) (Compl. ¶¶ 33-44);

- The requirement to register a handgun, 38 R.C.N.Y. § 5-22(8) (id. ¶¶ 45-46);

- The restriction on the number of handguns a licensee may register on a carry license, 38 R.C.N.Y. § 5-25(d)(4) (id. ¶¶ 47-54);

- The restriction on purchasing/acquiring/transferring a maximum of one gun within 90 days, N.Y.C. Admin. Code § 10-302.1(a)-(e) (id. ¶¶ 55-62);

- The limit of two on the maximum number of handguns that a licensee may carry, 38 R.C.N.Y. § 5-22(a)(7) (id. ¶ 63);

- The handgun license application fee and renewal fees, N.Y.C. Admin. Code 10-l3l(a)(2) (id. ¶¶ 22-32). [1]

---

[1]    Despite seeking to declare unconstitutional certain portions of the City's regulations that impose licensing application fees, Compl. at 21, plaintiffs, in their complaint, fail to specify the challenged

<u>Id.</u> ¶ 19.[2]

The City moved to dismiss all claims under either Federal Rule of Civil Procedure 12(b)(1) for lack of standing or under Rule 12(b)(6) for failure to state a claim. In light of the Supreme Court's intervening decision in <u>United States v. Rahimi</u>, 144 S. Ct. 1889 (2024), this Court ordered a supplemental round of briefing, which the parties duly filed. (Dkts. 24, 25). In this later briefing, the City informed the Court that on August 12, 2024, the N.Y.P.D. "published emergency rules in The City Record that repealed 38 R.C.N.Y. § 5-25 and replaced it with a new § 5-25." (Dkt. 25 at 3). The new emergency rule (1) eliminated N.Y.P.D.'s discretion to reduce the number of handguns that may be listed on a carry license, <u>compare</u> 38 R.C.N.Y. § 5-25(g)(3) <u>with</u> the former 38 R.C.N.Y. § 5-25(d)(4)(i); (2) provided for a procedure to list more than two handguns on a carry license, <u>see</u> 38 R.C.N.Y. § 5-25(g)(3); and (3) "clarif[ied] and streamlin[ed] the procedures applicable to licensees seeking to acquire and register a handgun to one or more licenses[,]" <u>see</u> 38 R.C.N.Y. § 5-25(a)-(f). (Dkt. 25 at 3).

_____

regulations. The Court construes plaintiffs' claims in this regard as challenging N.Y.C. Admin. Code § 10-131(a)(2)-(3), which set forth an original and renewal application fee of $340.00 for pistols and revolvers.

[2]    <u>See</u> <u>also</u> Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Dkt. 19) at 1 (clarifying plaintiffs' challenges to the City's "regulations and policies").

**DISCUSSION**

## I.  Preliminary Issues

The Court must first consider whether it has jurisdiction. Dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is proper when the district court "lacks the statutory or constitutional power to adjudicate" the action, "such as when . . . the plaintiff lacks constitutional standing to bring the action." Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L., 790 F.3d 411, 417 (2d Cir. 2015) (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(1) is also proper "when a case becomes moot," Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013) (internal quotation marks and citation omitted). These limitations are derived from Article III of the Constitution, which cabins the courts' jurisdiction to deciding live cases or controversies. U.S. Const. art. III, § 2, cl. 1. In essence, Article III requires that "the dispute before the court must be real and live, not feigned, academic, or conjectural." Russman v. Bd. of Educ., 260 F.3d 114, 118 (2d Cir. 2001).

### a. Mootness

#### i. Maximum limit on the number of handguns per license

The Court first addresses the question of mootness raised by the amendments to § 5-25. North Carolina v. Rice, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions[.]") (internal quotation marks omitted). In evaluating whether an issue is

moot, a Court must consider "whether the relief sought would, if granted, make a difference to the legal interests of the parties." Green v. Mazzucca, 377 F.3d 182, 183 (2d Cir. 2004) (citation omitted). If it is "impossible . . . to grant any effectual relief whatever to a prevailing party," the court "must dismiss the case, rather than issue an advisory opinion." Fuller v. Bd. of Immigr. Appeals, 702 F.3d 83, 86 (2d Cir. 2012).

A defendant, however, "cannot automatically moot a case simply by ending its unlawful conduct once sued." Already, L.L.C. v. Nike, Inc., 568 U.S. 85, 91 (2013) (citation omitted). Instead, a defendant claiming that a case is moot "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Id. (citing Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc., 528 U.S. 167, 190 (2000)). Where a defendant voluntarily ceases to engage in the challenged conduct, the case will not be rendered moot unless the defendant can demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Mhany Mgmt., Inc. v. County of Nassau, 819 F.3d 581, 603 (2d Cir. 2016) (citation omitted).

Applying these standards, the Court concludes that plaintiffs' claims for declaratory and injunctive relief with respect to the limitations on the number of handguns that may be simultaneously registered on a carry license, formerly found in 38 R.C.N.Y. § 5-

25(d), are now moot. To begin with, defendants voluntarily ceased the allegedly unlawful conduct by repealing the regulation and the Court thus cannot now award the requested relief. The situation is thus "sufficiently altered so as to present a substantially different controversy from the one that existed when this suit was filed." Lamar Advert. of Penn, L.L.C. v. Town of Orchard Park, 356 F.3d 365, 378 (2d Cir. 2004) (internal quotation marks omitted). Furthermore, there is "no reasonable expectation" that plaintiffs' alleged injury — the limitation on the number of handguns on a given carry license — will recur. See Knight v. City of New York, 2022 WL 18587766, at *4 (S.D.N.Y. Dec. 28, 2022), report and recommendation adopted, 2023 WL 371427 (S.D.N.Y. Jan. 24, 2023) (finding that the plaintiff's claims against the City after the city adopted an emergency rule eliminating the challenged requirement are moot); see also N.Y. State Rifle & Pistol Ass'n. v. City of New York, 140 S. Ct. 1525, 1526 (2020).

For the same reasons, the Court concludes that plaintiffs' request for declaratory and injunctive relief with respect to the discretionary provisions that allowed the N.Y.P.D. to decrease the number of firearms on a license, formerly found in 38 R.C.N.Y. § 5-25(d)(4)(i)), is now also moot.

However, insofar as plaintiffs seek retrospective actual or nominal damages for alleged constitutional violations related to the regulatory limits on the number of guns per carry license, that claim is not moot. See Compl. at 21; Fox v. Bd. of Trustees of State Univ. of New York, 42 F.3d 135, 142 (2d Cir. 1994); ("[A] claim for nominal

damages can suffice to avoid mootness when claims for injunctive and declaratory relief have become moot."); 13C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3533.3 (3d ed. 2023) ("The availability of damages or other monetary relief almost always avoids mootness[.]")

      b. <u>Standing</u>

The City argues that plaintiffs lack standing to challenge the regulations concerning (1) handgun purchase authorization, (2) the 90-day waiting period requirement, and (3) the limitation on the number of handguns per carry license.

To satisfy the standing requirements of Article III, a plaintiff must establish three elements: "(1) the plaintiff must have suffered an injury-in-fact—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the challenged conduct; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.</u>, 651 F.3d 218, 228 (2d Cir. 2011). Additionally, "[t]o establish standing to obtain prospective relief," in this case — declaratory and permanent injunctive relief — "a plaintiff must show a likelihood that he [or she] will be injured in the future[,]" <u>Carver v. City of New York</u>, 621 F.3d 221, 228 (2d Cir. 2010) (alterations added), "[t]hat is, a plaintiff must demonstrate a

'certainly impending' future injury." <u>Marcavage v. City of New York</u>,
689 F.3d 98, 103 (2d Cir. 2012).

        i. Handgun Purchase Authorization & Registration

     Plaintiffs seek to declare unconstitutional the entirety of 38
R.C.N.Y. § 5-25 (formerly known as "Handgun Purchase Authorization and
Safety Locking Device Requirements," now the "Handgun Acquisition
Requirements") and to permanently enjoin the enforcement of that rule.
Compl. at 21. The City argues that (1) the requested relief is
overbroad because § 5-25 contains requirements, such as the locking
requirements, that plaintiffs do not address in their complaint at
all, and that (2) plaintiffs lack standing because they have not
established that the purchase authorization portions of the regulation
had injured them. Defendant's Memorandum of Law in Support of Motion
to Dismiss the Complaint (Dkt. 15) at 4-5, 22 ("MTD Mem."). In
response, plaintiffs concede that they are not challenging the safety
locking requirements now found in § 5-25(b), <u>see</u> 38 R.C.N.Y. § 5-
25(b). Plaintiffs' Memorandum of Law in Opposition to Defendant's
Motion to Dismiss (Dkt. 19) at 4 ("MTD Opp."). But they stick by their
challenge to the purchase authorization requirement of 38
R.C.N.Y. § 5-25(a) (now 38 R.C.N.Y. § 5-25(c)).

     The purchase authorization requirement is one of several steps a
handgun licensee must complete to acquire a handgun, <u>see</u> <u>generally</u>
38 R.C.N.Y. § 5-25. One of those steps, as relevant here, requires the
licensee to obtain a "prior written authorization from the Division

Head, License Division." 38 R.C.N.Y. § 5-25(c). <u>See also</u> 38 R.C.N.Y. § 5-22(9) (addressing the "Conditions of Issuance") ("The licensee shall not purchase or replace a handgun prior to obtaining written permission from the Division Head, License Division[.]"). Further, a licensee "who acquire[s] and attempt[s] to register more than one (1) firearm in a ninety (90) day period, shall not be granted an authorization form to take possession of an additional firearm until the ninety (90) day period has elapsed." 38 R.C.N.Y. § 5-25(a).

However, "[f]or new and existing licensees, [the N.Y.P.D.'s] License Division <u>will</u> provide a handgun purchase authorization form, which is valid for thirty (30) calendar days from the issuance date and must be provided to the firearms dealer at the time of purchase of such handgun." 38 R.C.N.Y. § 5-25(c) (emphasis added). After the purchase (or the form's expiration date), a licensee must return the form to the License Division.

This Court concludes that none of the three plaintiffs here has alleged any cognizable injury traceable to the purchase authorization rule, which essentially obliges N.Y.P.D. to automatically issue purchase authorizations to licensees. Two plaintiffs (Mills and Sotomayor) possess both carry and premise licenses and were able to purchase guns pursuant to these licenses, Compl. ¶¶ 78, 100. The third plaintiff (Holliday) alleges that he cannot obtain a gun because of the cost of the application fee and not because of the alleged burden associated with the purchase authorization requirement. <u>Id.</u> ¶ 68.

Furthermore, neither Mills nor Sotomayor alleges that the purchase authorization deterred them from applying for a license or that the N.Y.P.D. refused to issue a purchase authorization. Read generously, Mills alleges, at most, some prior injury associated with the lost time incurred by him as a result of the purchase request authorization form being temporarily unavailable on the N.Y.P.D.'s website. Id. ¶ 89. But that had nothing to do with the purchase authorization itself. Moreover, plaintiff has not established that he is "likely to be harmed again in the future in a similar way," and he thus does not have standing to seek injunctive relief. Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016).

In a cursory fashion, plaintiffs also challenge the firearm registration regime. Compl. ¶¶ 45-46 & p. 21. Like the purchase authorization requirement, the firearm registration is one of the conditions of the issuance of a firearm license, mandating in relevant parts that "[t]he licensee is authorized to own only the handgun(s) that are listed on their license." 38 R.C.N.Y. ¶ 5-22(8). Plaintiffs do not allege that the mere act of registering the firearm injured them, nor do they claim that they were deprived of their right to keep and bear arms because of this requirement. In summary, they do not have standing to litigate what are no more than "generalized grievances" about the firearm regulation regime. See Gill v. Whitford, 585 U.S. 48, 65 (2018).

ii. 90-day Waiting Period

Next, plaintiffs challenge N.Y.C. Admin. Code § 10-302.1(a)-(e), which governs several types of conduct. Subsections (a) and (b) impose on licensees and firearm dealers a mandatory 90-day waiting period for anyone wishing to acquire or transfer a firearm. Subsections (c) through (e) impose firearms disposal requirements, such as that firearm dealers must follow certain record-keeping requirements. N.Y.C. Admin. Code § 10-302.1(c)-(e). As to (c) through (e), plaintiffs argue that they have standing because "acquisition simultaneously involves a disposition by a licensed firearm dealer/gun store." MTD Opp. at 4. But plaintiffs have not alleged any injury to themselves traceable to the disposition requirements imposed by (c) through (e), and they thus lack standing to challenge those subsections. However, the story is different as to subsections (a) and (b). The City argues that plaintiffs do not have standing to challenge subsection (a) because it imposes a 90-day waiting period for firearms dealers rather than individuals (who are governed by subsection (b)), and plaintiffs are not dealers in firearms. MTD Mem. at 5. A court may find third-party standing, however, where there is "a predictable chain of events leading from the government action to the asserted injury." Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 385 (2024). See also Warth v. Seldin, 422 U.S. 490, 505 (1975) ("When a governmental prohibition or restriction imposed on one party causes specific harm to a third party, harm that a constitutional provision or statute was intended to prevent, the indirectness of the

13

injury does not necessarily deprive the person harmed of standing to vindicate his rights."); Gazzola v. Hochul, 88 F.4th 186, 194 (2d Cir. 2023) (per curiam) (holding that gun vendors may bring Second Amendment claims on behalf of firearm purchasers). Here, plaintiffs have third-party standing to challenge the 90-day waiting period requirements applicable to dealers under subsection (a) because that regulation causally relates to the alleged injury to the plaintiffs-licensees, i.e., the 90-day temporary deprivation of each firearm acquisition or transfer. And as for subsection (b), the City does not contest that plaintiffs have standing to challenge the 90-day waiting period as applicable to individuals. The Court thus concludes that plaintiffs have standing to challenge N.Y.C. Admin. Code § 10-302.1(a) and (b), but not § 10-302.1(c)-(e).

      iii. Maximum limit on the number of handguns per license

The Court next considers plaintiffs' standing to sue for injuries allegedly suffered in connection with the City's regulations limiting the number of handguns registered on a carry license. Specifically, § 5-25(d)(4)(i) formerly limited to two the number of handguns that a licensee could register to a carry license. The same subsection had also formerly permitted the N.Y.P.D. to limit to one the number of handguns that appear on a carry license "when the licensee's needs do not require possession of two handguns." 38 R.C.N.Y. § 5-25(d)(4)(i). Section 5-25(d)(4)(vi), in turn, limited to one the number of handguns allowed on a premise license. Licensees could add additional handguns

to the premise license, and those requests were "reviewed on an individual basis." 38 R.C.N.Y. § 5-25(d)(4). Licensees could either add a maximum of two new guns to the carry license or swap out the handguns registered on their carry license with those registered on their premise license, thus allowing them to carry their desired weapon of choice. Each acquisition of a firearm triggers a 90-day waiting period. 38 R.C.N.Y. § 5-25(a); N.Y.C. Admin. Code § 10-302.1(b).

The City argues that plaintiffs fail to allege that they have suffered any injury as a consequence of either a denial of their request to add "additional handguns to a premises residence license or a decision by the License Division to limit Mills or Sotomayor to less than two handguns on a carry license." MTD Mem. at 6. Plaintiffs aver that their injury stems from having to choose which two guns they are permitted to carry on their persons. MTD Opp. at 6. Specifically, Mills alleges that he "intends to decide for himself which of his handguns to carry on any particular day, and to then carry it for self-defense, and objects to being required to seek and obtain permission from a government employee." Compl. ¶ 92. The Court finds that plaintiff Mills has standing to bring a claim for damages arising from the limitations formerly found in § 5-25(d) because he was deterred from applying for permission to transfer his handgun from one license to another, which restricted his purported right to a weapon of choice without any temporal restraints. The alleged injury is traceable to the City's enforcement of the regulations, that is, the City's refusal to register more than two handguns on a carry license,

and the injury is redressable by nominal damages. See <u>Antonyuk v.</u> <u>James</u>, 120 F.4th 941, 977-78 (2d Cir. 2024) (holding that a plaintiff had standing to bring a challenge to certain New York's licensing regulations where he was deterred from seeking a license due to these requirements). <u>See also</u> <u>Uzuegbunam v. Preczewski</u>, 592 U.S. 279 (2021)("A request for nominal damages satisfies the redressability element necessary for Article III standing where a plaintiff's claim is based on a completed violation of a legal right."). Sotomayor, however, does not allege a similar forward-looking injury and he therefore lacks standing to sue.

**II.  Motion to Dismiss**

Having resolved the standing and mootness issues, the Court turns to whether those plaintiffs' claims that are not moot and as to which they have standing survive the defendant's motion to dismiss. Under Rule 12(b)(6), a court must dismiss a complaint for failure to state a claim if, <u>inter alia</u>, the complaint lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (citing <u>Bell</u> <u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to a presumption of

truth. Id. "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 218 (2d Cir. 2014) (quoting Twombly, 550 U.S. at 555). The court must draw all reasonable inferences in the nonmovant's favor. Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

As to the regulations governing the acquisition and licensing of guns, neither plaintiff Mills nor plaintiff Sotomayor alleges that the City enforced the challenged regulations against them. Plaintiffs thus only bring a facial challenge to those regulations. See N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242, 265 (2d Cir. 2015) ("Because plaintiffs pursue this 'pre-enforcement' appeal before they have been charged with any violation of law, it constitutes a 'facial,' rather than 'as-applied,' challenge."). To mount a successful facial challenge, "the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). Unsurprisingly, facial challenges are "the most difficult to mount successfully." City of Los Angeles v. Patel, 576 U.S. 409, 415 (2015) (alteration and citation omitted).

Second Amendment

All the claims, whether facial or otherwise, that remain after certain claims have been dismissed for mootness or lack of standing, allege violation of the Second Amendment. The Second Amendment states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not

be infringed." U.S. Const. amend. II. For "over two centuries," "[t]he meaning of the Second Amendment ha[d] been considered settled by courts and legislatures" and "judges and legislators ... believed ... that the Second Amendment did not reach possession of firearms for purely private activities." District of Columbia v. Heller, 554 U.S. 570, 676 n. 38 (2008) (Stevens, J., dissenting). In Heller, however, the Supreme Court held that the Second Amendment protected the right to bear arms unconnected to the service in the militia. Id. at 636. Since Heller, the lower courts have struggled with discerning the scope of that right, resulting in multiple Supreme Court clarifications: first in McDonald v. City of Chicago, 561 U.S. 742 (2010), then in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022), and most recently United States v. Rahimi, 144 S. Ct. 1889 (2024). Taken together, these cases, as applied to challenges to firearm regulations, require courts to adopt a two-step approach. Under step one, a court must ascertain whether the regulations at issue apply to conduct that falls within the activities governed by the plain text of the Second Amendment as historically understood. If the answer is in the affirmative, then at step two, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Bruen, 597 U.S. at 24; see also Antonyuk v. James, 120 F.4th 941, 968 (2d Cir. 2024) ("Bruen requires courts to engage in two analytical steps when assessing Second Amendment challenges: first, by interpreting the plain text of the Amendment as historically understood; and second, by determining

whether the challenged law is consistent with this Nation's historical tradition of firearms regulation[.]"); <u>United States v. Price</u>, 111 F.4th 392, 398 (4th Cir. 2024) (en banc) ("First, we must ask whether the Second Amendment's plain text covers the conduct at issue. If not, that ends the inquiry: the Second Amendment does not apply.").

This case is different from all of the three Supreme Court cases cited above, in that none of the predominantly administrative regulations here operates to permanently deprive applicants of their right to own and carry firearms. Under the challenged rules, anyone with a general desire to obtain a gun can obtain one upon fulfilling certain predominantly non-discretionary administrative requirements and paying a fee.

Turning to step one, the Court's analysis must thus begin with a "textual analysis focused on the normal and ordinary meaning of the Second Amendment language." <u>Bruen</u>, 597 U.S. at 20 (internal quotation marks omitted). Plaintiffs argue, however, that the challenged regulations all impact and implicate their right to keep and bear firearms, MTD Opp. at 9-10, and therefore the burden is on the government to show that these challenged regulations are "consistent with this Nation's historical tradition of firearm regulation" under step two. <u>Bruen</u>, 597 U.S. at 20. But this is far too facile and would essentially eliminate the step-one analysis whenever a regulation has the slightest connection to guns. No case goes anywhere near so far. Rather, the Supreme Court in <u>Heller</u> interpreted the text of the Second Amendment to encompass a specific right, which is the "right to possess

19

and carry weapons <u>in case of confrontation</u>." <u>Heller</u>, 553 U.S. at 592 (emphasis added). So delimited, the Second Amendment has been recognized to coexist with ubiquitous local and state licensing regulations. <u>See</u> <u>Antonyuk</u>, 120 F.4th at 994.

Indeed, the high level of generality proposed by plaintiffs would sweep into the scope of the protections afforded by the Second Amendment <u>any</u> regulations affecting firearms – a result inconsistent with <u>Bruen</u> itself. <u>Oakland Tactical Supply, LLC v. Howell Twp.</u>, 103 F.4th 1186, 1195 (6th Cir. 2024) (explaining that in <u>Bruen</u>, the Supreme Court defined the proposed conduct protected by the Second Amendment with specificity by incorporating both "the purpose and location of the plaintiffs' desired action"). In <u>Bruen</u>, the Supreme Court explained that nothing in that decision "should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].'" 597 U.S. at 38 n.9.[3] "[B]ecause these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public

---

[3]    While arguably <u>dictum</u>, this statement should be given considerable weight. <u>See, e.g.</u>, <u>United States v. Bell</u>, 524 F.2d 202, 206 (2d Cir.1975) ("[A] distinction should be drawn between 'obiter dictum,' which constitutes an aside or an unnecessary extension of comments, and considered or 'judicial dictum' where the Court . . . is providing a construction of a statute to guide the future conduct of inferior courts. While such dictum is not binding upon us, it must be given considerable weight and cannot be ignored in the resolution of a close question we have to decide.").

carry." Id. (citing Heller, 554 U.S. at 635). Rather, the "shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure that only those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens" and "appear to contain only narrow, objective, and definite standards guiding licensing officials." Id.

In his concurrence joined by Chief Justice Roberts, Justice Kavanaugh further reinforced the point by emphasizing that "[t]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense [and] [i]n particular ... does not affect the existing licensing regimes—known as 'shall-issue' regimes—that are employed in 43 States." Id. at 79 (Kavanaugh, J., concurring). Because the majority in Bruen concluded that the objective shall-issue regimes are constitutional without first employing a historical analysis, such regulatory regimes can be properly viewed as presumptively constitutional because they do not operate to "deny ordinary citizens their right to public carry." Bruen, 597 U.S. at 38 n.9. In other words, shall-issue licensing regimes do not infringe upon rights protected by the Second Amendment "so long as they allow persons contemplated by the Second Amendment to keep and bear arms and are not applied in practice to frustrate that right[.]" United States v. Libertad, 681 F. Supp. 3d 102, 111 (S.D.N.Y. 2023). See also Md. Shall Issue, Inc. v. Moore, 116 F.4th 211, 222 (4th Cir. 2024) ("[I]n accord with the Supreme Court's 'shall-issue' discussion, we hold that non-discretionary 'shall-issue' licensing laws are

presumptively constitutional and generally do not 'infringe' the Second Amendment right to keep and bear arms under step one of the Bruen framework.").

It follows that, so far as plaintiffs' facial challenges are concerned, plaintiffs have failed to show that the challenged regulations are foreclosed by the text of the Second Amendment. The same result is reached, moreover, if one considers regulations here at issue not only on their face but also as applied to plaintiffs here and others similarly situated in this regard. In this respect, the Court considers each of the challenged regulations separately.

### a. 90-day Waiting Period

Plaintiffs allege that the City's regulations imposing a 90-day waiting period for acquiring, selling, or transferring firearms, see N.Y.C. Admin. Code § 10-302.1(a)-(b), are unconstitutional because, as plaintiffs claim, they have a right to acquire handguns without any temporal limitations on the rate of acquisition or transfer. But nothing in the text of the Second Amendment suggests that plaintiffs have a right to immediately obtain firearms "on demand" as opposed to having to wait a short period of time. And Plaintiffs do not allege that the 90-day waiting time for the acquisition of handguns is so lengthy as to suggest that the regulations unreasonably and unconstitutionally restrict the right to carry a handgun for self-defense. See Md. Shall Issue, Inc. v. Moore, 116 F.4th 211, 216 (4th Cir. 2024) (en banc) (holding that "Bruen foreclosed the plaintiffs'

'temporary deprivation' argument by stating that, despite some delay occasioned by 'shall-issue' permit processes, [that] type of licensing law is presumptively constitutional because it operates merely to ensure that individuals seeking to exercise their Second Amendment rights are 'law-abiding' persons."). Plaintiffs' challenge to the 90-day waiting period for acquisition of firearms therefore fails.

           b. <u>Limit on Carrying of Firearms</u>

Petitioners further challenge the City's limitation on "Carry License" and "Special Carry" (out-of-town) license holders, which allows licensees to carry "only one (1) handgun . . . on their person at any time." 38 R.C.N.Y. § 5-22(a)(7). Plaintiffs Mills and Sotomayor allege that they were injured because they cannot regularly carry a second, backup gun. Compl. ¶¶ 94-98, 107-112. The City contends that the regulation does not "infringe" plaintiffs' Second Amendment rights because it "does not restrict the issuance of a license in the first instance, or prevent the licensee from defending themselves[.]" MTD Mem. at 21-22.

Plaintiffs have failed to expressly define the specific protected conduct affected by the foregoing regulation, but the Court assumes that it is the carrying of at least two handguns. The Court must determine whether such conduct falls within the plain text of what is protected by the Second Amendment, which states that "the right of the people to keep and bear Arms, shall not be infringed." Noah Webster's American Dictionary of the English Language from 1828 defined

"infringe" as "to break, as contracts," "to violate," and "to destroy or hinder." Noah Webster, American Dictionary of the English Language (1828), available at https://archive.org/details/americandictiona01websrich/page/970/mode/2up?q=infringe. The applicable word here is "hinder," but for the purposes of the instance case, it is unnecessary to decide the level of hindrance that would violate the individual right to bear arms in case of confrontation, because the text of the Second Amendment as well as the relevant Supreme Court caselaw is clear that the central purpose of the Amendment is individual self-defense. Bruen, 597 U.S. at 29 (quoting Heller, 554 U.S. at 599) ("Individual self-defense is 'the central component' of the Second Amendment right.") (emphasis in text); see also Heller, 554 U.S. at 628 ("[T]he inherent right of self-defense has been central to the Second Amendment right."). Plaintiffs here can defend themselves in the City in case of confrontation by carrying a single handgun, and they do not allege otherwise. This Court therefore dismisses plaintiffs' challenge to the limitation on the number of handguns a licensee is permitted to carry.

c. Maximum limit on the number of handguns on a license

Plaintiff Mills next challenge the repealed requirements of § 5-25(d), which limited the number of handguns that a licensee could register on a carry license. Mills possesses numerous handguns, two of which he registered on his carry license with the rest being registered on his premise license. Compl. ¶ 78-83. The City's

requirements that obliged him to file certain administrative paperwork to satisfy the preferences for his choices of weapons to carry on his person plainly did not infringe his "right to possess and carry weapons in case of confrontation." Heller, 553 U.S. at 592. In essence, Mills argues that his preference to choose as between the different guns he owns without any temporal restrictions is constitutionally protected conduct. The Constitution, however, does not concern itself with the vagaries of consumer tastes and preferences. See, e.g., Gazzola v. Hochul, 88 F.4th 186 (2d Cir. 2023) (per curiam)(holding that "gun buyers have no right to have a gun store in a particular location," "[n]or do they have a right to travel no more than short distances to the most convenient gun store that provides what they deem a satisfactory retail experience") (internal quotation marks omitted); Teixeira v. Cnty. of Alameda, 873 F.3d 670, 680 (9th Cir. 2017) (en banc) ("[T]he Second Amendment does not elevate convenience and preference over all other considerations."). Thus, the administrative burden of adding handguns to a carry license does not infringe on Second Amendment rights, and plaintiffs challenge to this regulation fails as well. See, e.g., United States v. Scheidt, 103 F.4th 1281, 1284 (7th Cir. 2024) (holding that "[o]rdinary information-providing requirements . . . do not 'infringe' the right to keep and bear arms.)

      d. Licensing fees

Finally, plaintiffs argue that "more than a nominal fee" assessed in connection with an application for a handgun license or renewal

thereof is also unconstitutional. Compl. at 21. As already discussed, the application fees, like other objective requirements of the so-called shall-issue regimes, which are ubiquitous amongst the fifty states, are presumptively lawful because they do not infringe on the rights of "law-abiding, responsible citizens . . . to public carry." Bruen, 597 U.S. at 38 n.9. This interpretation is consistent with the Second Circuit's decision in Kwong v. Bloomberg, in which the court upheld the constitutionality of the very same $340 licensing fee. 723 F.3d 160, 165-69 (2d Cir. 2013). Borrowing a framework from the First Amendment context, the Second Circuit held that the imposition of "fees on the exercise of constitutional rights is permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity." Id. at 166. Bruen clearly did not alter this holding because it found licensing fees "presumptively lawful" so long as the fees were not "exorbitant [so as to] deny ordinary citizens their right to public carry." 597 U.S. at 38 n.9.

Plaintiffs have made no showing that the modest fees implicated here are in any sense exorbitant. Instead, they take a position foreclosed by the Supreme Court and Second Circuit's precedent: they argue that "[r]equiring that an individual pay a fee to the government before they can exercise the right to possess and/or carry weapons in common use is repugnant to the plain text of the Second Amendment and inconsistent with text, history, and tradition." Compl. ¶ 31. The foregoing cases clearly rebut that position. Further, because

plaintiffs also fail to allege the fees are excessive such that they effectively deprive applicants of their Second Amendment rights, plaintiffs' facial challenge similarly fails.[4] Evidence in the record further suggests that the fee is not excessive and designed to defray regulatory costs. Instead, the application fee has not increased since the Second Circuit's decision in Kwong over ten years ago, even though the fee must offset inflationary pressures and various administrative expenses that have increased in the interim. MTD Mot. at 17 (citing New York Penal Law §§ 400.00(1), (19)).

In short, those of plaintiffs' claims that are not dismissed because of mootness or lack of standing must be dismissed for failure to survive step one of the Supreme Court two step Second Amendment analysis. Although the Court therefore need not reach step two, it may be noted that here, too, plaintiffs claim would likely fail. The New York City's licensing requirements belong amongst some the oldest firearm regulations in the Nation.[5] These enduring regulations "originated in the cities of the post-Civil War period . . . [as] the

---

[4] The Complaint does not clearly indicate whether plaintiff Holliday mounts an as-applied challenge to Administrative Code § 10-131(a)(2)-(3), and this Court is under no obligation to construe the pleadings liberally because plaintiffs are represented by counsel. Regardless, the Court finds that an as-applied challenge fails as well because the Complaint alleges, in a barebones and conclusory fashion and without alleging any facts pertaining to Holliday's financial status, that he cannot afford to pay a fee every three years.

[5]    See, e.g., New York, N.Y., An Ordinance to Regulate the Carrying of Pistols in the City of New York, § 2 (Feb. 12, 1878), printed in Proceedings of the Board of Aldermen of the City of New York 612-16 (1878). See generally Antonyuk, 120 F.4th at 988-89 (cataloguing New York City's regulations).

result of changes in American society in the nineteenth century, including urbanization and concomitant shifts in norms of governance." Antonyuk, 120 F.4th at 992 (noting that "city people have long had a different relationship with guns than their rural neighbors, a relationship generally marked by greater concern about interpersonal violence") (citing Joseph Blocher, Firearm Localism, 123 YALE L. J. 82, 98-103, 112-21 (2013)). Indeed, based on this historical tradition, the Second Circuit recently held, inter alia, that certain New York licensing regulations "that afford a modicum of discretion to issuing officers" are consistent with the Nation's tradition of firearm regulation and the Second Amendment. Id. at 994, 998-99.

For the foregoing reasons, the Court hereby dismisses plaintiffs' complaint in full with prejudice. Clerk to enter judgment.

SO ORDERED.

Dated: New York, NY
       December 4 , 2024                    _____
                                            JED S. RAKOFF, U.S.D.J.